Argued March 29, reversed April 18, rehearing denied July 11, 1916.

## PHIPPS v. MEDFORD.

(156 Pac. 787; 158 Pac. 666.)

Municipal Corporations—Public Improvements—Assessments for Ben-
    efits—Notice—Curative Act.

1.  Though a city charter provided for notice to adjacent prop-
erty owners at least ten days before commencing construction of a
sewer, a sewer having been constructed without such notice an ini-
tiative amendment to the charter providing for the levy on realty
for sewers after construction, was valid, and applied to such sewer,
as it would have been permissible in the first place to allow con-
struction without previous notice, and it being within legislative power
by subsequent enactments to dispense with or obviate any previous
provision which might have been originally omitted.

Municipal Corporations—Public Improvements—Assessments—Exercise of Legislative Discretion—Review by the Courts.

2. In a suit to remove a cloud from the title of real estate said to consist of an assessment attempted to be levied to pay for the sewer, in the absence of fraud or criminality on the part of the city officials, the assessments of the tax being an exercise of municipal power referable to the legislative discretion of the city council, a fault in the construction of the sewer is not open to the court's inquiry.

Municipal Corporations—Public Improvements—Assessments—Decree of Invalidity—Reassessment.

3. A decree of the court declaring void an assessment of taxes upon adjacent owners for construction of a sewer affected only the assessment there involved, and cannot prevent any future levy under the charter as amended by Section 132a, providing for levy on adjacent realty for sewers after construction.

Municipal Corporations—Amendment of Charter.

4. Under Article XI, Section 2, of the Constitution, conferring power upon the voters of every city or town to amend their charters, to the extent that a legislative charter is inconsistent with a change wrought by the legal voters in that instrument, the latter expression of the legislative power vested in them must prevail.

Attorney and Client—Conduct—Presentation of the Case.

5. It is the attorney's duty, without flattery or scurrility, to present his view of the law, irrespective of an adverse ruling of the court.

Municipal Corporations—Public Improvements—Special Assessments—Assessments for Completed Work.

6. The initiative amendment to the charter of Medford is a valid exercise of municipal power to levy special assessments, although it provides for levying an assessment for work already executed.

Municipal Corporations—Charter Provisions—Construction.

7. Where an initiative municipal charter provision was so designed as to embrace the whole subject matter and was in conflict with the legislative charter, the earlier enactment yields to the later.

Municipal Corporations—Public Improvements—Special Assessments—Time of Assessment.

8. Under Medford Charter, Section 132a, providing that, regardless of defects in former proceedings, the common council may commence anew and proceed to levy an assessment for the improvement; it is not necessary for assessment after completion of the improvement that there shall have been an earlier and defective proceeding, but the assessment may be made at any time after the improvement.

Constitutional Law—Scope of Judicial Review—Policy of Law.

9. The court is not concerned with the policy of the initiative and referendum system, but must construe such laws and laws enacted thereunder as it finds them.

[As to judicial inquiry into motives prompting enactment of ordinance relating to local improvement, see note in Ann. Cas. 1912A, 718.]

**Municipal Corporations—Improvements—Reassessments—Statute.**

10. Medford Charter, Section 132a, providing for reassessment in case of defective proceedings on proper notice and after time is fixed for considering protests, is a proper exercise of the legislative power, committing such hearing to the municipal council.

**Municipal Corporations—Improvements—Assessments—Decision of Council—Collateral Attack.**

11. In a suit to remove a cloud from plaintiff's title alleged to result from the action of the municipal council assessing a tax for municipal improvements, its decision must be respected on collateral attack, in the absence of allegation of fraud in the procedure.

From Jackson: FRANK M. CALKINS, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by W. E. Phipps and others against the City of Medford to remove a cloud from the title to the real property of the plaintiffs. It is said to consist of an assessment attempted to be levied by the municipal defendant upon the holdings of the plaintiffs within its boundaries to pay for a sewer which had been laid in that city. It is claimed that the rating was void because the municipality had not given notice prior to the commencement of the improvement calling upon the property holders to show cause why the same should not be constructed. As an additional cause of suit, the complaint alleges the result of former litigation to remove a cloud growing out of the same transaction, whereby the court declared the impost void, and this is relied upon as *res adjudicata* estopping the defendant from enforcing the levy here involved.

The answer admits that no notice was given prior to the initiation of the work, but it counts upon subsequent provisions of the charter which the city says authorizes its council to reassess property for an improvement of the kind actually made, either when the former assessment has been declared void, or when the council in its own opinion shall conclude it is illegal or

of doubtful validity.   From a decree according to the prayer of the complaint, the defendant appeals.

                                        ‑ REVERSED.

For appellant there was a brief and an oral argument by *Mr. B. R. McCabe.*

For respondents there was a brief and an oral argument by *Mr. W. E. Phipps.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It is admitted that by the charter of the City of Medford, enacted by the legislative assembly of the state February 7, 1905, the city is empowered to construct all necessary sewers of sufficient capacity to produce a complete system of drainage; to cause the expense thereof to be visited upon the property directly benefited by and adjacent to the same; to declare by ordinance the manner of carrying said assessment into full effect; and that the charter on that subject has this provision:

"The council shall provide by ordinance that the owners of said adjacent property shall be served by notice by the city recorder at least ten days before the beginning of the construction of said sewer, drain or ditch, calling upon such property owners as are adjacent thereto and benefited thereby to appear before said council and show cause if any, why said property should not be assessed for the construction of said sewer, drain or ditch, and in the event that the said or any property owner or owners shall see fit to protest against the construction of said sewer, drain or ditch, the said council shall at such time as it may appoint, consider said protest," etc.

Without giving the notice prescribed in the excerpt just quoted, the city actually made the improvement in

question in 1910 and 1911. The defendant avows that the sewer had been constructed and was in actual use and operation for nearly three years before the ordinance now under consideration was adopted to enforce a tax for the payment of the expense thereof. The charter, however, contains this provision, enacted by the legal voters of the city under the initiative process:

"Sec. 132a.   Whenever heretofore or hereafter the council has caused, or may cause, any street or alley to be improved, or has caused any sewer or water-main to be laid and has, or may hereafter assess or attempt to assess upon the property adjacent thereto or benefited thereby the cost of such improvement, and said assessment by reason of any failure to give any requisite notice or by reason of any other defect in the proceedings leading up to the making of such improvement or the levying of such assessment shall be declared to be void by any court, or if the council shall be of the opinion that said assessment is illegal or doubtful by reason of any such omission or defect, said council may cause the cost of said improvement to be reassessed against the property adjacent to said improvement or benefited thereby, in the following manner: The council shall declare by resolution its intention to make such reassessment, which resolution shall briefly describe the improvement, and shall declare the intention of the council to assess the cost thereof upon the property adjacent to said improvement, or benefited thereby, describing in said resolution each parcel of property which it intends so to reassess and the amount it proposes to assess against each parcel. Said resolution shall fix the time and place for holding a meeting of the council at which all protests against reassessing the cost of said improvement against adjacent property, or property benefited thereby, shall be heard. Said resolution shall be published three times in a newspaper published and of general circulation in said city, and shall be posted in five public places in said city, at least ten days before the date of said meeting."

The city recites in detail in its answer all its proceedings under Section 132a, and the record shows a sufficient compliance with the same. The decree pleaded as an estoppel by the plaintiffs does not refer to the last assessment, but prevents the enforcement of one made indeed after the sewer had been completed but before the one now involved; it being the fact as shown by the record that two assessments had been attempted, both after the accomplishment of the work. The crucial question of the case is whether, in face of the provision for previous notice found in the legislative charter, the city, by virtue of the initiative amendment called Section 132a, could lawfully levy upon realty to pay for a sewer constructed as this one was without having given previous notice to the property holders.

It is a conceded fact that the sewer actually has been constructed by the city. It would have been permissible in the first place to provide by charter that the city could do this without notice to anybody, and that, it having been completed, the municipal authorities could call upon the adjacent property holders ratably to meet the expense, always provided that at some stage in the proceedings the taxpayer should have the right and opportunity to be heard before the exaction was visited upon him whereby he might be deprived of his estate. It is within the legislative power by subsequent enactment to dispense with or obviate any previous provision which might have been omitted originally in such proceedings, and such is the rule laid down in *Thomas* v. *Portland,* 40 Or. 50 (66 Pac. 439); *Duniway* v. *Portland,* 47 Or. 103 (81 Pac. 945); *Hughes* v. *Portland,* 53 Or. 370 (100 Pac. 942); *Mills* v. *Charleton,* 29 Wis. 400 (9 Am. Rep. 578); *Schintgen* v. *La Crosse,* 117 Wis. 158 (94 N. W. 84); *Smith* v. *Detroit,*

120 Mich. 572 (79 N. W. 808). This the city has done by the initiative charter amendment. Such legislation is designed to compel payment for improvements by real estate which is actually and equitably benefited thereby. It is referable to the taxing power of government, which is an attribute of sovereignty. The municipality, endowed with that function, is entitled to pursue its object with the pertinacity of a nemesis until it attains its purpose regardless of objections which do not measure up to the standard of equity and good conscience. This power is attended by and is subject to the constant condition that at some point in their effort to lay a tax upon property the owner thereof must have an opportunity to be heard, so that his holding shall not be taken from him nor burdened without due process of law. All these terms are fulfilled by the initiative amendment to the charter.

2. Some fault is found with the construction of the sewer whereby it is not fully efficient. In the absence of any allegation of fraud or criminality on the part of the officials representing the city, this is not a subject open to our inquiry. It is an exercise of municipal power referable to the legislative discretion of the city council with which we cannot interfere. The plaintiffs cite authorities like *Van Sant* v. *Portland,* 6 Or. 399, *Wilson* v. *Salem,* 24 Or. 504 (34 Pac. 9, 691), *Smith* v. *Portland,* 25 Or. 302 (35 Pac. 665), *Strout* v. *Portland,* 26 Or. 299 (38 Pac. 126), and similar precedents, to establish the contention that in making public improvements which lead to an enforcement of a tax on adjacent property the charter provisions must be strictly construed. These would be applicable if an attack had been made directly upon an assessment based immediately upon the original proceeding or upon the first assessment occurring thereafter. It must be remem-

bered, however, that this is an independent proceeding begun anew under the initiative Section 132a, and has no further dependence upon the former transactions than what is found in the actual fact that the improvement really has been accomplished. The case is not like *Murray* v. *La Grande,* 76 Or. 598 (149 Pac. 1019). There the charter provided that the council should give notice to the property holder of its intention to levy the assessment and of a description of the improvement proposed, together with the boundaries of the district to be affected and the estimated cost of the project designating the time when the freeholder might be heard on all these matters. The charter treated entirely of prospective improvements, giving the land owner an opportunity to contest not only the kind, but also the cost and the feasibility of the proposed betterment. The Medford Charter under consideration is not limited to prospective undertakings, but gives the council power to act on past improvements actually accomplished. Here, according to the city's fundamental law, the council has perpetual power to pursue the adjacent property until it succeeds in framing a regular proceeding complying with the initiative charter to compel payment of the actual expense incurred by the city for the undertaking already completed.

3, 4. The decree of the court pleaded as an estoppel affects only the assessment there involved. It cannot prevent any future levy regularly devised under the charter as amended. On the basis that the initiative charter amendment was a lawful exercise of the power conferred upon the voters of every city and town to amend their charters under Article XI, Section 2, of the Constitution, the proceedings of the council under the last assessment, being the one here in question, appear to be regular. To the extent that the legislative

charter is inconsistent with the change wrought by the legal voters in that instrument, the latter expression of the legislative power vested in them must prevail.

The decree of the Circuit Court is reversed and the bill dismissed.     REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

---

Denied July 11, 1916.

ON PETITION FOR REHEARING.

(158 Pac. 666.)

On petition of respondents for rehearing.
                                        DENIED.

*Mr. W. E. Phipps,* for the petition.

*Mr. B. R. McCabe, contra.*

Department 1.   MR. JUSTICE BURNETT delivered the opinion of the court.

5. A very earnest petition for a rehearing of this case has been presented on behalf of the plaintiffs and has had our careful attention. As a foreword, we notice this statement of the petitioner:

"The applicant for a rehearing occupies a somewhat embarrassing position. If his supplication is subservient, sycophantic, and flattering, his sincerity and honesty of purpose may be questioned; while if he utters his actual sentiment and opinion of the decision, he is apt to alienate the affection of the court."

The duty of an attorney to his client requires utter fearlessness of purpose and a high order of talent. The function of the court which counsel is called upon

to advise is to declare the law without reference to flattery, invective or affection. The ascertainment of the legislative will as limited by the Constitutions of the state and of the United States is the sole object of judicial quest. The true lawyer will present his view to the court without sycophancy on the one hand or scurrility on the other. He will courageously declare his views of the true rule to be observed, with his reasons therefor, irrespective of the adverse ruling of the court. His duty to both court and client will admit of nothing less. His character as a gentleman and the dignity of his profession will permit of nothing more. Any court worthy of the name will respect such conduct although it may not concur with the argument.

6. The essence of the contention advanced as ground for rehearing is that because the city council did not observe the mandate of the legislative charter of Medford requiring 10 days previous notice before beginning the construction of a sewer, the laying down of such a drain cannot be made the basis of any future taxation of the property of the plaintiffs; and hence that, although the legal voters of Medford had amended their charter in the particulars noted in the former opinion, such legislation was *ex post facto,* and could not be made to apply to the improvement in question, which had been established for about three years before the present effort to tax for it had been inaugurated. That this argument is fallacious is settled by *Phillip Wagner* v. *Leser,* 239 U. S. 207, 216 (60 L. Ed. 230, 36 Sup. Ct. Rep. 66, 68), where the court says:

"It is first contended that the complainant is deprived of its property without due process of law, because the special assessment levied upon its property is for the special benefits long since accrued, and that the statute under consideration is retrospective in its

operation, thereby disturbing rights which had accrued
to and become fixed in the property holders long be-
fore the passage of the statute; that the state had no
authority, because of benefits thus long since con-
ferred, to make the assessment in question. But we
deem this contention foreclosed by the decision of this
court in *Seattle* v. *Kelleher*, 195 U. S. 351 (49 L. Ed.
232, 25 Sup. St. Rep. 44). In that case it was con-
tended that there could be no valid assessment for a
certain improvement, because it was levied after the
work was completed; but this court met that contention
by saying: 'The principles of taxation are not those of
contract. A special assessment may be levied upon an
executed consideration; that is to say, for a public
work already done (citing authorities). If this were
not so, it might be hard to justify reassessments (citing
additional precedents). Of course, it does not matter
that this is called a reassessment. A reassessment
may be a new assessment. Whatever the legislature
could authorize if it were ordering an assessment for
the first time, it equally could authorize notwithstand-
ing a previous invalid attempt to assess. The pre-
vious attempt left the city free 'to take such steps as
were within its power to take, either under existing
statutes, or under any authority that might thereafter
be conferred upon it, to make a new assessment upon
the plaintiff's abutting property' in any constitutional
way: *Norwood* v. *Baker*, 172 U. S. 269, 293 (43 L. Ed.
443, 19 Sup. Ct. Rep. 187); *McNamee* v. *Tacoma*, 24
Wash. 591 (64 Pac. 791); *Annie Wright Seminary* v.
*Tacoma*, 23 Wash. 109 (62 Pac. 444).''

7. This ruling by the highest court of the land
demonstrates that the amendment of the city charter
in question is a valid exercise of municipal power, and
that it is permissible to provide for local taxation to
reimburse the municipality for expenses already in-
curred in making improvements of the kind mentioned.
The change was so designed as to include the whole

81 Or.—9

subject matter contained in the section of the legislative charter upon which the plaintiffs rely in respect to the acquirement of jurisdiction to tax. Hence the earlier enactment must yield to the later one, where they conflict: *Strickland* v. *Geide,* 31 Or. 373 (49 Pac. 982). The initiative power conferred upon the legal voters of cities and towns by Article IV, Section 1a, and Article XI, Section 2, of the state Constitution sanctions the adoption of the amendment known as Section 132a of the Medford Charter.

8, 9. This new provision is very sweeping in its terms. It substantially provides that, no matter what the defect in the former proceeding, whether it be jurisdictional or otherwise, and no matter whether it shall have been declared void by judicial decision or if the common council shall be of the opinion that the assessment is illegal or doubtful for any reason, it may commence anew and proceed as stated in the revised charter. It cannot be contended that, as a preliminary to a valid assessment under this amended charter, the council must make a fictitious impost or attempt to act without jurisdiction. To urge this would be to say that a void act is the essential foundation for a valid one. The law does not require a vain thing, and hence considering the whole scope of the amendment, we hold that at any time after the improvement is laid down the city council, upon giving to the property holders to be affected the required notice and an opportunity to be heard, may proceed to assess and levy taxes to reimburse the municipality for the expense of the already installed improvement. Counsel for petitioners has divined this result. He says:

"While industrious citizens are busy at their ordinary vocations, special elections may be called for the purpose of voting charter amendments such as 132a.

In a city containing more than 10,000 people, only 310 persons may vote upon such an amendment, 175 for and 135 against the measure, adopting it by 40 votes.''

Such consequences may be appalling to the taxpayer, but they present no judicial question. The initiative and referendum system has let loose upon the state such agencies and such results. We are subject to a system of government by popular election. If industrious citizens would protect themselves, they must make attendance at the ballot-box part of their ordinary vocations, and so continue until the people in their wisdom shall devise a more conservative system of government. Until that period shall arrive, the courts can only declare the law as it is, leaving the change to be wrought by the people themselves, the original source of all constitutions and laws.

We are urged to take up the question of the actual benefits to be derived or not by the property of the plaintiffs from the construction of the sewer in question. As an authority for so doing, we are cited to the case of *Myles Salt Co.* v. *Board of Commrs.*, 239 U. S. 478 (60 L. Ed. 392, 36 Sup. Ct. Rep. 204). That was a suit to restrain the sale of plaintiff's land for a tax levied by the defendant drainage district. It seems that the property of the plaintiff consisted of an island surrounded on two sides by bayous, on the rear by a salt-water marsh, and on the front by a bay. The island rose abruptly 175 feet or more above the surrounding marshy lands which were to be drained. The problem upon the island was to prevent washing and erosion, and the allegations were to the effect that the district had been made arbitrarily to include this elevation so as to levy taxes upon it for a scheme that would not, in any way, benefit the property, but would impose

a burden upon it for the benefit of the land of others, and that this was done without any just reason. Summing up the complaint, it is thus characterized in the opinion of the court:

"The charge is that plaintiff's property was included in the district, not in the exercise of 'legal legislative discretion,' not that the scheme of drainage would inure to the benefit of the property, even indirectly, but with the predetermined 'purpose of deriving revenues to the end of granting a special benefit to the other lands subject to be improved by drainage, without any benefit' to plaintiff 'or its property whatever,' present or prospective."

10, 11. The case was before the court on a general demurrer to the complaint. Nothing appeared in the pleading to indicate, as here appears, either that the question of benefit to or taxability of the property of plaintiff had been heard or determined by any lawfully established tribunal, or that an opportunity had been given for that purpose. On the demurrer the allegations necessarily were taken to be true as alleged. If nothing else appeared, the demurrer was properly sustained. But the present case is widely different. Written large on the amendment is the provision that notice shall be given, a time fixed for considering protests, and that the council shall hear and determine all objections to the proposed tax. It is a proper exercise of legislative power to commit this hearing and determination to the municipal council. Its decision must be respected in a collateral attack upon it, in the absence of any allegation of fraud in the procedure. This is in accordance with our previous decisions. It is not out of harmony with the doctrine of the *Myles Salt Co. Case* (*Myles Salt Co.* v. *Board of Commrs.*), 239 U. S. 478 (60 L. Ed. 392, 36 Sup. Ct. Rep. 204).

It comports with the rule laid down in the syllabus of *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324 (45 L. Ed. 879, 21 Sup. Ct. Rep. 625):

"It was not the intention of the Fourteenth Amendment to subvert the systems of the states pertaining to general and special taxation. That amendment legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation, affecting life, liberty, and property as is afforded by the Fifth Amendment against similar legislation by Congress, and the federal courts ought not to interfere when what is complained of is the enforcement of the settled laws of the state, applicable to all persons in like circumstances and conditions, but only when there is some abuse of law, amounting to confiscation of property, or deprivation of personal rights."

*Hughes* v. *Portland,* 53 Or. 370 (100 Pac. 942), cited by the plaintiffs, was a case of a writ of review directly attacking the proceeding itself. It was not a suit to enjoin the collection of a tax involving a collateral attack upon the assessment. The question at issue in *Terwilliger Land Co:* v. *Portland,* 62 Or. 101 (123 Pac. 57), was the matter of competition in obtaining bids from contractors. In that case the council had specified a particular kind of patented pavement of which a certain company had the monopoly, and it appeared that by the terms of the advertisement no other person could bid for the work. It was held that this was an incurable violation of the charter providing for competition in such work. No such question arises here. In *Dyer* v. *Bandon,* 68 Or. 406 (136 Pac. 652), the objection to the method of acquiring jurisdiction was that the notice did not specify the kind of improvement proposed, although this feature was required by the charter. No question is here raised about the terms of the

notice. The contention is that the power to give notice, and in pursuance thereof to assess the plaintiffs' property for an already established improvement, is utterly wanting. The fallacy of the position of the plaintiffs is that they rely upon the legislative charter and ignore the subsequent amendment made by the voters of the town. The sweeping provisions of the latter enactment enable the council to take up any previous improvement within the direct scope of municipal powers by a new and distinct proceeding, and after giving notice and an opportunity to be heard and determining objections thereto, to proceed to reimburse the city for previous expenses in that direction. The power is far-reaching, and may fall into the hands of irresponsible parties, and may be exercised in a manner abhorrent to conservative citizens, yet it exists; and, in the absence of any allegation of fraud on the part of those using the authority, we must respect their determination.

The petition for rehearing is denied.

REVERSED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.