Argued April 1, affirmed June 29, rehearing denied September 28, 1920.

# BROWN v. SILVERTON.

(190 Pac. 971.)

**Municipal Corporations—Charter—Amendments—Held not to Supersede Existing Charter.**

1. Amendments of May 7, 1917, to Charter of the City of Silverton, under Article II, Section 2, of the Constitution, and Article IV, Section 1a, by adding thereto Sections 135–138, *held* to merely supplement and not take the place of the then existing charter, notwithstanding Article IV, Section 22, of the Constitution, requiring that the revised act or amended sections shall be set forth and published at length, such constitutional provision having no application where the legislation merely adds new sections to an existing act without modifying or altering the original act.

**Statutes — Amendments — Constitutional Provision Inapplicable — Adding New Sections.**

2. Article IV, Section 22, of the Constitution, providing that the act revised or sections amended shall be set forth and published at length, and not merely by reference to title, does not apply where the legislation merely adds new sections to an existing act without modifying or altering the original act.

**Municipal Corporations—Statutes—Jurisdictional Requirements.**

3. Statutes conferring power upon cities and towns must provide for all jurisdictional requirements compelled by the Constitution, but may, if the legislature chooses, add to such jurisdictional requirements, though legislature is not required to do so.

**Municipal Corporations — Exercising Given Power — Jurisdictional Requirements must be Complied With.**

4. A city or town in exercising a given power must heed every jurisdictional requirement regardless of whether it is purely statutory or required by the Constitution.

**Municipal Corporations — Ordinances — Assessment — Jurisdictional Requirements—Failure to Observe.**

5. Failure to observe a jurisdictional requirement, whether organic or statutory, will usually defeat an ordinance requiring an improvement and invalidate an ordinance for an assessment.

**Municipal Corporations—Special Improvements—Statutes—Constitutional Right of Owner to be Heard.**

6. Statute providing for special improvements must entitle owners to be heard at some stage of the proceedings, the owners' right to be heard being a constitutional right.

**Municipal Corporations—Improvements—Right to Remonstrate—Only Created by Statute.**

7. The right to file an operative and self-executing remonstrance against improvements exists only where the statute creates the right.

Municipal Corporations — Improvements —Remonstrance—Mistake— Jurisdiction.

8. That city council, when passing upon remonstrance to special improvements by abutting owners under Charter of City of Silverton, Section 71 (as in force in 1914), *held* a sufficient remonstrance insufficient because of a mistake in construction of charter provisions as to sufficiency of remonstrance, did not affect the sufficiency of the remonstrance to oust the council's jurisdiction to make the improvement.

Taxation—Attribute of Sovereignty.

9. The power to tax is an attribute of sovereignty.

Municipal Corporations—Special Assessment—Power of Taxation.

10. The power to levy a special assessment, though it is to be differentiated from a pure tax, is a branch of the power of taxation, and when exercised is a manifestation of sovereignty.

Constitutional Law—Special Improvement — Remonstrance—Special Assessments.

11. The filing of an operative and self-executing remonstrance to construction of a special improvement by abutting owners under City of Silverton Charter, Section 71 (as in force in 1914), conferring on abutting owners the right to file such a remonstrance, would not result in a contract with attending contractual rights and obligations, the fundamental doctrines of special assessments not being based upon the principles of contract.

Municipal Corporations—When Legislature may Reassess and Cure Defects.

12. The legislature may ratify and cure, through reassessment, that which might have been constitutionally and lawfully authorized in the first instance, but cannot validate retrospectively what it could not have originally authorized, the power to validate a tax or assessment rendered invalid by errors or omissions being an essential attribute of the sovereign power of taxation.

Constitutional Law—Remonstrance—Not to Preclude Reassessment— Due Process of Law.

13. Reassessment proceedings under Charter of City of Silverton, Sections 135–138, made necessary because of invalidity of original assessment for city council's lack of jurisdiction to proceed with the improvement owing to sufficient remonstrance thereto by abutting owners under Section 71, *held* not unconstitutional on the theory that it is the taking of property without due process of law, since the legislature, in prescribing the procedure with reference to the construction of such improvement, was not required to have included the provision making a remonstrance a bar to further proceedings, and therefore the city, under the home-rule amendments, by its legislative power could amend the law so as to make the proceedings valid notwithstanding such remonstrance.

Statutes—Construction.

14. Laws will not be interpreted to be retrospective unless by their terms they are clearly intended to be so.

Municipal Corporations — Charter—Amendments Providing for Re-
assessment—Construction.

15.    Amendments of 1917 to City of Silverton charter, enacted by
adding Sections 135–138 thereto, providing for reassessment where
assessment for special improvement "which has heretofore or which
may hereafter be made," construed to operate retrospectively and to
affect invalid assessment levied prior to the amendment.

From Marion: PERCY R. KELLY, Judge.

Department 1.

This is a suit to enjoin the City of Silverton from
collecting a reassessment made on account of a street
improvement.  Section 71 of the municipal charter,
which was in force in 1914, empowered the council to
improve the streets; but this section of the charter
also provided that "the owner or owners of two
thirds of the property next adjacent thereto may
make and file with the council a written remonstrance
against the proposed improvement, and thereupon
the same shall not be proceeded with."  The charter
made the abutting property liable for the cost of
street improvements: Laws 1891, pp. 539, 542.  In
April, 1914, the council ordered that McClaine Street
be covered with a hard-surface concrete pavement,
and caused notices to be published of its intention to
pave the street.  Within the time fixed by the char-
ter the plaintiffs and other abutting owners filed a
remonstrance against the proposed improvement.
Acting on the theory that only the front footage of
the adjacent property should be counted on the
remonstrance, the council decided that the remon-
strance did not represent "two thirds of the prop-
erty next adjacent" to the improvement, and a contract
for laying the pavement was let to C. A. Hartley
on July 15, 1914.  The contractor laid the pave-
ment, and on October 21, 1914, upon the recommen-
dation of the city engineer, the council accepted the

improvement. Subsequently, in conformity with the directions of the charter, the council passed an ordinance assessing the cost of the improvement against abutting property.

On June 14, 1914, J. G. Lais, together with J. M. Brown, E. J. Brown, M. Small, J. H. Brewer, A. F. Blackerby and Sophia Blackerby, the plaintiffs in the present suit, commenced a suit to enjoin the municipal authorities from letting the contract and proceeding with the improvement. The city answered by claiming that the remonstrance did not represent the necessary number of front feet to make it effective. After hearing the evidence in that case the circuit judge decided that the remonstrance was insufficient, and rendered a decree dissolving a preliminary injunction and dismissing the suit, and then the plaintiffs in that case appealed. Instead of discontinuing the work pending the appeal, the city proceeded with the improvement and completed it before the appeal was heard in· this court. The appeal finally terminated on January 16, 1917, in a decree enjoining the city from assessing the abutting property with the cost of the improvement. The decree in this court was based upon our conclusion that under the terms of the charter the sufficiency of the remonstrance should be measured by the superficial area of the abutting property, and not by the number of front feet "adjacent" to the improvement, and that when so measured the remonstrance was sufficient to prevent the improvement: *Lais* v. *Silverton,* 77 Or. 434 (147 Pac. 398, 150 Pac. 269, 151 Pac. 712); *Lais* v. *Silverton,* 82 Or. 503 (162 Pac. 251).

Acting under the authority of Article II, Section 2, and Article IV, Section 1a, of the state Constitution, the legal voters of Silverton at an election held on

May 7, 1917, amended the charter by adding to it
sections numbered 135, 136, 137 and 138. The
amendment, so far as it is material here, reads as
follows:

## "AN ACT

"Submitted by the common council of the city of
Silverton, Marion County, Oregon, to the legal voters
thereof to amend an act entitled 'An act to incorpo-
rate the city of Silverton, Marion County, State of
Oregon,' filed in the office of the secretary of state
on the 18th day of February, 1891, to provide that
whenever any assessment to cover the cost of any
public improvement heretofore or hereafter made
shall be annulled, set aside, or declared to be invalid,
or shall be repealed by any court or other tribunal,
or by the council, the council may, by ordinance, re-
assess the cost of such improvement upon the prop-
erties benefited to the extent of their respective and
proportionate share of the full cost of said improve-
ment.

"Be it enacted by the people of the city of Silver-
ton, Marion County, State of Oregon:

"Be it enacted by the common council of the city
of Silverton, Marion County, State of Oregon:

"The city charter of the city of Silverton, Marion
County, State of Oregon, is hereby amended to read
as follows:

"Section 135.—Whenever any assessment for the
opening, altering, grading or other repair or im-
provement of any street, or the construction, recon-
struction or repair of any water or sewer plants,
systems, mains or laterals, or for any local improve-
ment whatsoever, which has heretofore, or which may
hereafter be made by the city has been, heretofore,
or shall hereafter be, set aside, annulled, vacated or
declared void, or its enforcement enjoined or refused
by any court, directly or indirectly, or when the
council shall be in doubt as to the validity of any
assessment, or any part thereof, the council may, by
ordinance, make a new assessment or reassessment

upon the lots, blocks or parcels of land's which have been benefited by such improvement, to the extent of their respective and proportionate share of the full value thereof. Such reassessment shall be based upon the special and peculiar benefit of such improvement, to the respective parcels assessed, at the time of the original making of the improvement, but shall not exceed the amount of such original assessment. Interest thereon at the legal rate may be added from the time when such improvement was completed at the discretion of the council. Such reassessment shall be made in an equitable manner, and as nearly as may be in accordance with the provisions of the charter in force at the time it is made. But the council may adopt a different plan of apportionment of benefits when, in its judgment, essential to secure an equitable assessment. The proceedings required by this charter to be had prior to the making of the original assessment shall not be required to be taken or had within the intent of this section in the making of such reassessment.

"Section 136.—Such reassessment shall be made and shall become a charge upon the property upon which the same is laid, notwithstanding the omission, failure or neglect of any officer, body or person to comply with the provisions of the charter of the city of Silverton, or laws of the State of Oregon, connected with or relating to such improvement or assessment, and notwithstanding the proceeding of the council, or any other officer, board or body, or public authority, contractor or any other person connected with such work or contract may have been defective, irregular or void, and notwithstanding any such irregularity or defect may be jurisdictional, and the provisions hereof authorizing a reassessment shall apply where an improvement has been made, notwithstanding a remonstrance sufficient to defeat the same shall be filed, in the same manner and to the same extent as the provisions hereof would apply in the case of any other defect, irregularity or circumstance rendering the proceeding void. The council

shall, by resolution, declare the district, and designate the properties that have been or will be benefited by the improvement for which the reassessment is made, and shall direct the recorder to prepare a preliminary assessment upon the property included therein, within a time to be fixed by such resolution. Upon the passage of such resolution the recorder shall, as soon thereafter as such reassessment is prepared, give notice by two successive publications in one of the city newspapers that such preliminary assessment is on file in his office, giving the date of the passage of the resolution directing the making of the same, and stating .the time at which the council will hear and consider the objections to said reassessment by parties aggrieved thereby and notifying such persons not to depart from any such hearing or meeting until such reassessment has been completed. And the auditor shall forthwith, following the passage of such resolution also mail to the owner of each lot thereof, or tract of land affected by such assessment, or to his agent, at the last known postoffice address thereof, notice substantially similar to that required to be .published. If the postoffice address be unknown, then such notice shall be mailed to such owner or agent at Silverton, Marion County, Oregon.

"Section 137.—The owner of any property which is assessed on such reassessment, or any person having interest therein, may, within ten days from the date of the last publication of the published notice, file with the recorder objections in writing to such assessment. At the time appointed in such published notice the council shall hear and determine all objections which may have been filed by any interested party. The council shall have the power to adjourn such hearing from time to time and, in its discretion, to revise, correct or set aside such preliminary assessment and order the remaking thereof, and pass an ordinance approving and confirming such reassessment as corrected and remade by it. And the decision of the council shall be final with respect to the regularity, validity and correctness of

the reassessment. When such reassessment is completed and confirmed it shall be entered in the docket of city liens, and shall be enforced and collected in the same manner that other assessments for local improvements are enforced and collected under this charter and the laws governing the city of Silverton.''

Pursuant to the authority conferred by the amendment, the council on August 6, 1917, regularly declared its intention to reassess the ''adjacent'' lands benefited by the improvement to the extent of their proportionate share of the cost. The council also defined the district which had been benefited by the improvement, and directed the recorder to prepare a preliminary assessment upon such designated property. The recorder made a preliminary assessment, and a notice was duly published stating that the council would convene on September 4, 1917, and hear any objections that might be made. The plaintiffs appeared and interposed objections to the proposed reassessment; but the council disallowed the objections, and then passed a reassessment ordinance charging the cost of improving McClaine Street ''against the property adjacent to and abutting upon said portion of said street which has been specially and peculiarly benefited by such improvement to the extent of its respective and proportionate share of the full value thereof.'' After the enactment of the reassessment ordinance the plaintiffs brought this suit for the purpose of annulling the reassessment proceedings. A trial in the Circuit Court resulted in a decree dismissing the suit without costs, and the plaintiffs appealed.        Affirmed.

For appellants there was a brief with oral arguments by *Mr. Walter C. Winslow* and *Mr. Richard W. Montague.*

For respondent there was a brief over the names of *Messrs. McNary & McNary* and *Mr. E. M. Page,* with an oral argument by *Mr. John H. McNary.*

HARRIS, J.—The plaintiffs contend: (1) That the pavement was not laid in accordance with the terms of the contract; (2) that because of its form, the amendment adopted by the legal voters of Silverton in 1917 displaced and supplanted the original charter, with the result that the amendment alone constitutes the whole charter; and (3) that the reassessment proceedings are unconstitutional and void for the reason that they amount to a taking of property without due process of law.

The complaint alleges that the contractor failed to comply with his contract by failing to roll the subgrade with a 10-ton roller "until same made no impression thereon"; by estimating the component parts of the pavement instead of measuring them; by using cement without submitting samples to the city; by neglecting to tamp the mixture placed in position on the street with iron-shod rammers; and by permitting heavy loads to be hauled over the pavement before it hardened. The same contention, based upon the same grounds of alleged failure of performance, was urged in *McClaine* v. *Silverton,* 83 Or. 26 (162 Pac. 496), where, when speaking of the same contract and the same improvement as are involved here, it was said that the evidence submitted there did not justify this court in reviewing the conclusion of the municipal authorities that there was a substantial compliance with the contract. A transcript of the evidence submitted in *McClaine* v. *Silverton* was by a stipulation of the parties here received as evidence in the present case. In addition

97 Or.—29

to the transcript referred to, the trial court heard the testimony of eight witnesses, of whom three were called by the plaintiffs and five by the defendants. The trial court in the instant case found from the evidence that "said improvement was completed substantially as agreed upon." Here, as in *McClaine* v. *Silverton,* the evidence is conflicting, and after a careful examination of the whole record, we do not feel justified in disturbing the findings of the trial judge.

1. The contention that the amendment constitutes the whole charter is without merit. In 1891 the legislature enacted a charter consisting of 130 sections: Laws 1891, p. 530. In 1911, the legal voters exercised the power of the initiative, and added sections 131, 132, 133 and 134 to the charter. The amendment of 1917 merely enlarges the then existing charter by adding four sections, and by numbering them consecutively with reference to the 134 sections of the then existing charter. The amendment of 1917 conferred the power of reassessment where that power did not previously exist. The amendment of 1917 was not enacted as a revision of the original charter, nor as a substitute for all that had been done before; but it was passed as a supplement to the then existing charter. The amendment did not change or modify a single word in any of the 134 preceding sections. *Sheridan* v. *Salem,* 14 Or. 328 (12 Pac. 925), is a precedent squarely in point, for there the facts were like those presented here, and it was there ruled that the amendment was not controlled by Article IV, Section 22, of the state Constitution, which commands that "no act shall be revised or amended by mere reference to its title, but

the act revised or sections amended shall be set forth
and published at length.''

2. Even though we assume, without deciding, that
Article IV, Section 22, of the state Constitution, gov-
erns not only the legislative assembly when adopting
an act, but also controls the legal voters of cities and
towns when exercising the power of the initiative,
nevertheless this section of the Constitution does not
apply to the amendment of 1917, for the reason that
legislation which does no more than to add new sec-
tions to an existing act, without modifying or alter-
ing the original act, does not come within the em-
brace of constitutional provisions like Article IV,
Section 22, of our Constitution: 25 R. C. L. 875.

The principle announced and applied in *Nottage* v.
*Portland,* 35 Or. 539 (58 Pac. 883, 76 Am. St. Rep.
513); *Phipps* v. *Medford,* 81 Or. 119 (156 Pac. 787,
158 Pac. 666); *Wagoner* v. *La Grande,* 89 Or. 192
(173 Pac. 305), supports the conclusion that the re-
assessment proceedings are constitutional and valid:
See, also, *Wilson* v. *Portland,* 87 Or. 507, 514 (169
Pac. 90, 171 Pac. 201); *Ukase Investment Co.* v.
*Portland,* 95 Or. 176 (186 Pac. 558); *Gardner* v. *Port-
land,* 95 Or. 378 (187 Pac. 306). Although our
conclusions could be securely rested upon the prece-
dents already mentioned, yet, because of the earnest
and learned arguments made by counsel for the
plaintiffs in their written brief and at the hearing,
we have examined the subject anew.

Jurisdictional requirements concerning street im-
provements and special assessments may, for the
purposes of this discussion, be divided into two
classes: (1) Those which arise out of and are com-
pelled by organic law; and (2) those which arise out
of and are compelled only by statutory law: Gray

on Limitations of Taxing Power, 616. The first class finds its source in written constitutions; the other in legislative assemblies.

3. When any given power is, by a statute enacted by a legislative assembly, conferred upon cities and towns, that statute must, in order to make such power available, provide for all jurisdictional requirements compelled by the Constitution; but the legislature need not, although it may if it chooses, add to such jurisdictional requirements as are compelled by the Constitution. Jurisdictional acts made necessary by the organic law may for present purposes be termed indispensable, for the reason that any attempt by legislation to confer a power is ineffective unless provision is made for such jurisdictional acts; while those made necessary by statute only, and not required by the Constitution, may be called dispensable, for the reason that the legislature is not obliged to provide for them, although it may do so if it wishes. If the legislature does prescribe jurisdictional acts in addition to those required by the Constitution, then the sum of these jurisdictional requirements, organic and indispensable as well as statutory and dispensable, constitutes the mode, and therefore the measure of the power exercisable by the municipality.

4, 5. So far as the city or town is concerned, it is obliged to heed every jurisdictional requirement, regardless of whether such requirement is purely statutory or essentially organic in its nature, for both the Constitution, and ordinarily the legislature, are of superior authority; and, therefore, failure to observe a jurisdictional requirement, whether organic or statutory, will usually defeat an ordinance order-

ing an improvement, and invalidate an ordinance for an assessment.

6. The right to be heard at some stage of the proceedings arises out of the Constitution. The legislature, when enacting the charter of 1891, complied with the Constitution, and made provision for notice and an opportunity to be heard. These were indispensable and jurisdictional requirements.

7. The charter of 1891 also provided that a remonstrance, when signed by the owners of two thirds of the property adjacent to the proposed improvement, should operate as a bar to further proceedings and prevent the improvement. While, strictly speaking, a sufficient remonstrance ousts jurisdiction, we may, for convenience, speak of the filing of such a remonstrance as a jurisdictional act. The effect of a remonstrance is dependent wholly upon the statute. A remonstrance may of itself evidence the disapproval of its signers, and show that they do not acquiesce in a proposed improvement; but it has no legal effect except as provided by statute. The right to file an operative and self-executing remonstrance exists only where the statute creates the right; and, therefore, we may speak of the remonstrance filed by the plaintiffs, and others in 1914, as a dispensable jurisdictional act: Page & Jones on Taxation by Assessment, § 803; *City Street Improvement Co.* v. *Laird,* 138 Cal. 27 (70 Pac. 916); *City of Atchison* v. *Price,* 45 Kan. 296 (25 Pac. 605).

8. The council, it is true, when passing upon the remonstrance, decided that the sufficiency of the remonstrance should, under the terms of the charter, be measured by the number of front feet abutting upon the proposed improvement, and not by the superficial area of the adjacent property. The cir-

cumstance that the council was mistaken in its construction of the charter cannot affect the question, for the fact remains that the remonstrance was sufficient to oust the council's jurisdiction to make the improvement.

9, 10. The power to tax is an attribute of sovereignty, and the power to levy a special assessment, although it is to be differentiated from a pure tax, is a branch of the power of taxation, and when exercised is a manifestation of sovereignty.

11. The fundamental doctrine of special assessments is not based upon the principles of contract; and, therefore, the charter, conferring the right to file an operative and self-executing remonstrance, plus the filing of such remonstrance, did not result in a contract with attending contractual rights and obligations: *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324 (45 L. Ed. 879, 21 Sup. Ct. Rep. 625); *Seattle* v. *Kelleher,* 195 U. S. 351 (49 L. Ed. 232, 25 Sup. Ct. Rep. 44, see, also, Rose's U. S. Notes); *Colby* v. *Medford,* 85 Or. 485, 525 (167 Pac. 487); *Howell* v. *Buffalo,* 37 N. Y. 267.

As said in *Nottage* v. *Portland,* 35 Or. 539, 548 (58 Pac. 883, 76 Am. St. Rep. 513):

"It may be regarded as settled that the legislature may, unless restricted by the state Constitution, legalize or validate retrospectively a proceeding for the improvement of a street which it might have authorized in advance, and it may also cure defects in or make immaterial statutory requirements which it could have dispensed with in the first instance."

The doctrine, as expressed in *Frederick* v. *Seattle,* 13 Wash. 428, 432 (43 Pac. 364, 365), is as follows:

"The rule deduced from all the authorities seems to be, in substance, that if the legislature had the power in the first instance to make valid the assess-

ment without the requirement which was disregarded by the authorities, it can by legislative enactment dispense with that requirement in providing for a new assessment.''

12. In brief, the legislature may ratify and cure through reassessment that which it might have constitutionally and lawfully authorized in the first instance. The power to validate a tax or assessment rendered invalid by errors or omissions is an essential attribute of the power vested in the legislature in its control over the sovereign power of taxation, and is necessarily without limit except as restricted or limited by the Constitution, in cases where the legislature could originally authorize the tax or assessment, although it cannot validate retrospectively what it could not originally have authorized. If a jurisdictional act is a ''dispensable act'' within the meaning of those words as here used, the rule, subject to certain possible exceptions, is that the legislature can cure a defect, which has resulted from failure to do a dispensable jurisdictional act, by providing for a reassessment: *Spencer* v. *Merchant,* 125 U. S. 345 (31 L. Ed. 763, 8 Sup. Ct. Rep. 921); *Seattle* v. *Kelleher,* 195 U. S. 351 (49 L. Ed. 232, 25 Sup. Ct. Rep. 44, see, also, Rose's U. S. Notes); *People* v. *Supervisors,* 26 Mich. 22; *In re Commissioners of Elizabeth,* 49 N. J. Law, 488 (10 Atl. 363); *Mills* v. *Charleston,* 29 Wis. 400 (9 Am. Rep. 578); *Sanderson* v. *Herman,* 108 Wis. 662 (84 N. W. 890, 85 N. W. 141); *Mayor* v. *Ulman,* 79 Md. 469 (30 Atl. 43); *City of Chester* v. *Black,* 132 Pa. 568 (19 Atl. 276, 6 L. R. A. 802); Gray on Limitations of Taxing Power, § 1282 et seq.; 25 R. C. L. 111, 171; Hamilton on Special Assessments, § 823; *Reiff* v. *Portland,* 71 Or.

421, 427 (141 Pac. 167, 142 Pac. 827, L. R. A. 1915D, 772).

Reassessment proceedings have been sustained: Where the reassessment was levied to pay for an improvement for which, when the improvement was made, there was no statutory authority to levy an assessment as to a part of the improvement, and for which part the municipality had determined to pay by general taxation (*Seattle* v. *Kelleher,* 195 U. S. 351 [49 L. Ed. 232, 25 Sup. Ct. Rep. 44]); where the petition for the improvement did not contain the names of owners of one half of the property fronting on the proposed improvement (*Nottage* v. *Portland,* 35 Or. 539 [58 Pac. 883, 76 Am. St. Rep. 513]); where the work was done under a void contract (*Wagoner* v. *La Grande,* 89 Or. 192 [173 Pac. 305]); where there was a failure to observe a provision of the charter requiring the giving of notice before commencing the construction of the improvement (*Phipps* v. *Medford,* 81 Or. 119 [156 Pac. 787, 188 Pac. 666]); where the original assessment was void because of the failure to procure the consent of the necessary number of property owners (*In re Antwerp,* 56 N. Y. 261); where the original assessment was void because the contract for the improvement was illegally let (*St. Paul* v. *Mullen,* 27 Minn. 78 [6 N. W. 424]); where the order directing the improvement was void because of jurisdictional defects (*State* v. *District Court,* 95 Minn. 183 [103 N. W. 881]); where the order for the improvement was void because made without a certificate of the city assessor (*Howell* v. *Buffalo,* 37 N. Y. 267); where the assessment was void because there was no petition signed by the owners of more than three fifths of the front feet abutting upon the improve-

ment (*Frederick* v. *Seattle,* 13 Wash. 428 [43 Pac. 364]); where there was no estimate of the cost submitted by the engineer of the council before making the contract (*Emporia* v. *Norton,* 13 Kan. 569, 588); where the paving was done under authority of an act subsequently declared unconstitutional (*Chester City* v. *Black,* 132 Pa. 568 [19 Atl. 276, 6 L. R. A. 802]); where the order directing the improvement is by charter declared to be of no effect until the consent in writing of the owners of one half of the front footage is obtained (*Jones* v. *Town of Tanawanda,* 158 N. Y. 438 [53 N. E. 281]); and where the petition for the improvement lacks the required number of signatures (*Kansas City* v. *Silver,* 74 Kan. 851 [85 Pac. 805]).

13. The legislature was not obliged, when it enacted the charter of 1891, to include a provision making a remonstrance signed by any given number of owners operative and self-executing. The provision making a remonstrance a bar to further proceedings could have been omitted, for it was a "dispensable" jurisdictional act; and, therefore, under the rules so well established by the authorities, the legislature could, prior to the adoption of the home-rule amendments to the Constitution, have passed a special act providing for a reassessment and applying to Silverton alone: See Page & Jones on Taxation by Assessment, 1624; *Manley* v. *Emlen,* 46 Kan. 655 (27 Pac. 844). In other words, the legislature, in the exercise of its power to amend a municipal charter by a special law, could, prior to 1906, have adopted the very amendment which the legal voters of Silverton themselves adopted, and such special law would have been constitutional. The amendment

involved was concerning an intramural power, and was within the scope of the legislative authority of the legal voters of Silverton; and it is therefore valid to the same extent as though it had been passed as a special law by the legislature prior to 1906: *State ex rel.* v. *Port of Astoria,* 79 Or. 1, 17 (154 Pac. 399). However, nothing said here is to be construed as a judicial affirmation of the validity of Section 138 of the amendment, for the question of the validity of that section is not involved in the instant case.

14. The plaintiffs argue that the amendment should not be construed so as to operate retrospectively. It is true, as contended by the plaintiffs, that the settled rule of construction is that laws will not be interpreted to be retrospective unless by their terms they are clearly intended to be so: *Wist* v. *Grand Lodge A. O. U. W.,* 22 Or. 271, 282 (29 Pac. 610, 29 Am. St. Rep. 603); *Catterlin* v. *Bush,* 39 Or. 496 (59 Pac. 706, 65 Pac. 1064).

15. As we read the amendment it clearly and plainly operates, and was intended to operate, retrospectively: See *Kadderly* v. *Portland,* 44 Or. 118, 159 (74 Pac. 710, 75 Pac. 222).

It is also contended, under the amendment "in question in the case at bar, that the right of the property owner is in effect limited to a hearing upon the amount of his assessment." In our view of the amendment, it furnishes to the land owners "an opportunity to raise all pertinent and available questions, and dispute their liability, or its amount and extent": *Spencer* v. *Merchant,* 125 U. S. 345 (31 L. Ed. 763, 767, 8 Sup. Ct. Rep. 921, 926, see, also, Rose's U. S. Notes).

Our views of the questions presented on this appeal result in the conclusion that the decree must be affirmed without costs in either court.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BENSON and JOHNS, JJ., concur.