Argued at Pendleton, May 6; reversed July 23, rehearing denied September 17, motion to recall mandate allowed November 12, 1929 .

# W. I. EBBERT v. FIRST NATIONAL BANK OF CONDON
(279 Pac. 534)

58

60

For appellant there was a brief and oral argument by *Mr. Howard P. Arnest.*

For respondent there was a brief over the names of *Messrs. Bowerman & Kavanaugh* and *Mr. Charles H. Horner* with an oral argument by *Mr. Jay Bowerman.*

ROSSMAN, J. The plaintiff, a mortgagor, seeks, in this action, to recover damages from the defendant, mortgagee, for its alleged failure to enter satisfaction upon the public records of two chattel mortgages which he alleges he paid. March 16, 1921, when the plaintiff was the owner of a wheat ranch in Gilliam county, and of the personal property thereon, he executed and delivered to the defendant his promissory note for the sum of $4,800; June 2, 1921, he prepared and delivered to the defendant his note in the sum of $4,906.30; September 13, 1921, a similar transaction took place in regard to a note for $665, and on September 17, 1921, he signed and delivered to the defendant another for

$5,161.89. Each note was secured by a chattel mortgage and all of the latter were properly recorded in the chattel mortgage records. The $665 obligation was discharged by payment in money. The second note was a renewal of the first, the difference in amount being accumulated interest; the fourth was similarly a renewal of the second; liability upon it was discharged, not by payment, but through foreclosure of the accompanying chattel mortgage. Satisfaction of the mortgages was not entered upon the public records until February 9, 1924.

The plaintiff contends that when he executed the fourth note he paid the sum of 50 cents for a marginal release of the first and third mortgages, and requested defendant to enter such a satisfaction upon the chattel mortgage records. It is clear that he made no such request in regard to the second note, because this obligation had escaped from his memory until his attention was called to it upon the trial. The plaintiff testified that he also deposited with the county clerk of Gilliam county the sum of 50 cents and at that time again requested of the defendant a satisfaction upon the public records. His complaint avers that the latter failed to enter such releases until February 9, 1924, because of its "malicious and wrongful design" to ruin his credit, drive him from the community, prevent him from securing loans and credits otherwise with which to discharge the encumbrances upon his property, and obtain his property for itself. His pleading alleges that as the result of the defendant's failure to satisfy the mortgage records "the plaintiff was unable to secure loans and credits with which to pay off and secure the discharge, release and satisfaction of outstanding indebtedness secured by mortgages upon real property

and personal property then owned by the defendant, or those controlled and directed by the defendant and that said real and personal property was thereby lost to plaintiff through foreclosure proceedings—all to the plaintiff's actual loss, harm and damage in the sum of thirty-seven thousand eight hundred and 08/100ths ($37,808.08) dollars.'' The verdict and judgment in the circuit court were in favor of the defendant. The plaintiff appealed and presents 13 assignments of error.

 The plaintiff supplied evidence that when he executed the fourth note, secured it by a chattel mortgage and delivered both to the defendant the latter accepted them, not as additional security for the existing indebtedness but in lieu of the first obligation and promised to satisfy the chattel mortgage records. He testified that when new notes and mortgages were executed the old ones were returned. This evidence, if believed, would have warranted a finding that the first note was thereby paid: Jones on Mortgages (7 ed.), § 926, and 21 R. C. L., Payment, § 72. The third note apparently was paid simultaneously with actual money. The plaintiff testified that at that time he requested the defendant to enter a marginal release upon the mortgage records of the first and third mortgages, and paid the defendant 50 cents to defray the county clerk's charges for this service. Having supplied the above testimony he contends that his case was brought within the provisions of § 9891, O. L. This section of our laws requires a mortgagee, after full performance of the conditions of the mortgage and tender ''of his reasonable charges,'' to discharge the mortgage, or execute and deliver a certificate of discharge to the mortgagor within 10 days after request; it also provides that should he fail to do so he should

become liable to the mortgagor "in the sum of $100 damages, and also for all actual damages occasioned by such neglect. * * *" This section originally was applicable only to real estate mortgages, but the plaintiff contends that the enactment of 1901 Session Laws, p. 125, subd. 5, which is codified as § 10181, O. L., extended its effect to chattel mortgages. The latter section expressly mentions § 9891 and declares that it shall become applicable to chattel mortgages; the defendant insists that when the legislature endeavored to apply this section of our laws in regard to real estate mortgages, to chattel mortgages, and failed to set forth the text of § 9891 in the new enactment, it violated § 22, art. IV of the state constitution which provides that no act shall be revised or amended by mere reference to its title. Before passing upon this objection we observe that § 3653, O. L., which is applicable to counties with a population of less than 50,000 inhabitants, prescribes a charge of 25 cents for entering a satisfaction of a chattel mortgage, and that § 3639, O. L., applicable to other counties, exacts a similar charge for a like service. The first of these provisions became a part of our laws in 1905 and the second in 1903, while § 10181 was enacted in 1901. Prior to the enactment of § 10181 the law of this state, both legislative and common, recognized chattel mortgages; as early as the year 1866 the legislative assembly had provided methods for the foreclosure of such mortgages. The statutory provision in regard to real estate mortgages was extensive. Prior to the enactment of § 10181 there was no statutory law dealing with the precise subject-matters effected by its various provisions. Under these circumstances we do not believe that the effect of the attacked section was to revise or amend a previous law, but that it was a supplemental act which did not modify or

alter an existing act. The following two cases are illustrative: *Brown v. City of Silverton,* 97 Or. 441 (190 P. 971), *The Borrowdale,* 39 Fed. 376; the general rule is stated and applied in I Cooley's Const. Limitations, 8 ed., p.315. We conclude, therefore, that the enactment of § 10181 was not in conflict with the suggested constitutional provision. It follows from the foregoing that if the plaintiff (1) satisfied the conditions of any of his mortgages, (2) tendered to the mortgagee the sum of 25 cents for a marginal release, and (3) requested such a satisfaction, he became entitled to a valid cause of action against the defendant, by virtue of § 9891, O. L., if within the 10-day period the defendant failed to execute the necessary marginal release, and further that all rulings of the circuit court in conflict with these conclusions were erroneous.

 September 27, 1921, the plaintiff signed the last of the four mortgages and, as we have previously observed, he relies upon the execution and delivery of that mortgage as effecting payment of the first note and mortgage. At approximately the same time he paid the third note in money. He did not institute this action until October 23, 1926. Since more than three years separates these two events, the defendant contends that the recovery of the $100 item at least was barred by the section of our statute of limitations which pertains to penalties and forfeitures, and thus seeks to uphold the lower court's instruction upon that item. It has been held that when a statute imposes a duty, specifies a time within which it must be performed, and gives to a prescribed party a remedy, if the act is not performed, the period of limitations begins to run immediately upon the failure to discharge the required duty: 2 Wood on Limitations, 4 ed., § 187; 37 C. J., Limitations of Actions; § 264 and

*Barnes v. Pitts Agricultural Works,* 6 Ida. 259 (55 P. 237). Hence, we conclude that at the close of the 10th day following September 27, 1921, the plaintiff's cause of action had accrued and the limitation period began to run. Subd. 2 of § 7, O. L., provided a three-year limitation period for "an action upon a statute for penalty or forfeiture, where the action is given to the party aggrieved. * * *" The defendant contends that this action is of the type thus defined, while the plaintiff argues that subd. 2 of § 6, O. L., which specifies a six-year limitation period for "an action upon a liability created by statute, other than a penalty or forfeiture" is the provision which governs this action; § 9891 provides for the recovery of two sums: (a) $100 damages," this is recoverable even though the mortgagor has sustained no damage; it is smart money which is intended to quicken the mortgagee in the prompt performance of his duty: *Malarkey v. O'Leary,* 34 Or. 493 (56 P. 521), (2) "all actual damages ocasioned by such neglect" the measurement of the latter is determined by the extent of the injury inflicted upon the aggrieved party.

No previous appeal to this court has required us to determine what section of our statute of limitations is applicable to the action provided for by this act. In *Malarkey v. O'Leary,* supra, and in *Knudson v. Knudson,* 128 Or. 635 (275 P. 663), we determined the purpose of "the sum of $100 damages" and held it penal in character. With that conclusion we remain satisfied. A mere reading of the statute suffices to induce the conclusion that the balance of the recovery "for all actual damages" is remedial. We are especially persuaded to the latter conclusion by the fact that before the enactment of the statutes of this kind both law and equity had provided a remedy against a dere-

lict mortgagor who refused to enter a satisfaction. The remedy in proper instances included the recovery of actual damages: 41 C. J., Mortgages, p. 815, § 972. Since an action was available before the enactment of such legislation it would seem illegal to hold that the statutory action for actual damages contemplates the recovery of a penalty or a forfeiture. Since the statute provides for complete redress to an aggrieved mortgagor, and also permits the recovery of a sum which is not founded upon assent nor measured by damages actually received, but is intended to quicken compliance with the law, we are persuaded that a remedial clause and a penal clause coexist in the statute and that the appropriate part of the limitation statute must be applied to each clause. We quote the following from *Brown v. Quincy O. & K. C. Ry. Co.,* 198 Mo. App. 71, (199 P. 707, 709):

"There may be a remedial clause and a penal clause in the same section of a statute, and in such case each may receive the construction which its class may demand: Endlich on Interpretation of Statutes, § 332; 2 Lewis' Sutherland Statutory Construction, § 532; *Huntington v. Attrill,* 146 U. S. 657, 667 (13 Sup. Ct. 224, 36 L. Ed. 1123). So the appropriate part of the Statute of Limitations should be applied to each clause."

■ Before considering the remaining assignments of error we shall determine whether the record contains any evidence of actual damage capable of supporting a verdict in plaintiff's favor. The recovery of the item of $37,808.08 was ventured upon the contention that the defendant wrongfully and purposely failed to satisfy the mortgage records and thereby caused the Oregon-Washington Joint Stock Land bank of Portland to reject his application for a mortgage loan in the sum of $25,000. Before that incident could become an element of damages, it was necessary that

the evidence should show (a) that in the absence of the wrongful act there was a reasonable likelihood that the loan would have been made and (b) that the defendant's neglect caused the rejection of the application.

■ The proof showed that August 7, 1922, the plaintiff applied to the land bank for a loan of $25,000. The printed form upon which the application was made propounded to him many questions; two of these inquired concerning the encumbrances upon his property and unpaid interest. The latter he did not answer, but he stated the encumbrances as follows: Hypothec Bank, Spokane, $17,000, First National Bank of Condon, $4,100, and G. S. Blake, $4,000. What attitude the bank assumed towards his application is not revealed by the record, except so far as it may be gleaned from the fact that it caused an appraisement to be made of his property, and from a letter dated November 5, 1922, written upon the stationery of the land bank and received in evidence over the objection of the defendant; a copy of it follows:

"W. I. Ebbert,
Condon, Oregon.

Since writing you October 13, 1922, we have found out that you are owing other debts than you show in your financial statement to us, among them two chattel mortgages to the First National Bank of Condon. This, as you know, is a misrepresentation of facts. We, therefore, do not see our way clear to go ahead with the loan in any amount.

Ira T. Walker,
Ass't Secretary."

We have not overlooked the fact that the plaintiff testified that the reason why his application failed was because of the defendant's neglect to satisfy the mortgage records, but it is evident that this conclusion was based solely upon the aforementioned letter; it was incompetent if the letter was inadmissible. Hence, the

plaintiff was compelled to rely upon the letter to prove that the loan would have been made if these two mortgage records had been satisfied, and that the failure to enter the release caused the rejection of the application.

 Mr. Ira T. Walker, whose name is subscribed to the aforementioned letter, was not called as a witness. One Claude Davison, who styled himself as the manager of the Joint Stock Land Bank, but who did not enter its employ until three years after the application, produced the letter and testified that he had found it in the company's files. He, however, knew nothing of that transaction beyond testifying that he was familiar with Mr. Walker's signature, and that the latter was not subscribed to the letter. Without specifying the manner, the plaintiff testified that he had "received" this document; thereupon it was admitted into evidence. It is clear to us that this ruling was erroneous. The letterhead contains the statement "Incorporated and Operated under Federal Farm Act"; from this we assume that the entity was created under 39 Stat. 360, § 16, p. 374 (12 U. S. C. A., §§ 811-823); but we do not understand that this letter, narrative in style, would become admissible as a public record or document. When the author of this communication composed it, he was not under oath and was not subject to cross-examination; the writing was, therefore, hearsay evidence when applied to this case. We know of no exception to the hearsay rule which would warrant its reception in evidence. By producing this letter in lieu of a witness, familiar with the transaction, the plaintiff effectively denied the defendant all cross-examination upon one of the most important items of the case. How valuable this privilege was may be determined from the latter's uncertain refer-

ence to the debts which the plaintiff failed to disclose and from the further fact that the public records at that time recorded the following chattel mortgages executed by the plaintiff, none of which the plaintiff mentioned in his application: Margaret Eade, $500, F. Ward, $560.60, Steve Barr, $265, Barker Store Co., $445, Northwestern Pacific Hypotheek, $1,245, Edina Worden, $2,500, a Miss Wilkins, $500, F. F. Waffle and Mrs. Kent, $1,500, and John H. Knotts, $250. In addition to the foregoing his interest upon the $17,000 mortgage to the Hypothec Bank of Spokane, which was secured by his real property, was unpaid from January 1, 1921, and "taxes in excess of $480" were due and unpaid upon the real and personal property. The circumstances supplied no necessity for the receipt of the letter; Mr. Walker was still alive, the president, vice president and some of the directors of the Joint Stock Land Bank, who were identified with the company at the time of this transaction, were within the jurisdiction of the court. We are convinced that the letter should not have been received. In its absence there was no proof of this element of damage. We have not overlooked the testimony of Mr. H. A. Dryer, a real estate broker; he testified that in May of 1923, he and another were negotiating for the purchase of this ranch. The plaintiff contends that this sale failed on account of the defendant's wrongful neglect to satisfy the two mortgage records; but it will be observed that the complaint makes no mention of this prospective sale. We have carefully read the testimony in regard to this incident. When Mr. Dryer visited the ranch the $17,000 mortgage upon the real property was in process of foreclosure and the property had been seized on account of nonpayment of taxes. There was no summer-fallow upon the ranch, hence no crop would be available for more than a year. Mr.

Dryer discovered, upon the public records, other mortgages besides these two which the plaintiff had not mentioned in his negotiations. He and his client had not committed themselves to make any purchase; the best that can be said for Mr. Dryer's testimony is that he visited the place as an interested party, and discovered various discouraging factors which persuaded him to discontinue his negotiations. Such a remote possibility of injury is too uncertain to be recoverable as damages: Sutherland on Damages, 4 ed. 53; Sedgwick on Damages (8 ed.), § 170. The following apt language of Mr. Justice McBride in *Spain v. Oregon-Washington R. & N. Co.*, 78 Or. 355 (153 P. 470, Ann. Cas. 1917 E, 1104), is applicable: "When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration." See also 17 C. J., Damages, § 88, p. 734.

██ ██ Since we find no proof of actual damage, and since liability for the punitive, or penal damages, was barred by the statute of limitations it follows that the most which the plaintiff could recover is the sum of $1, nominal damages. That amount is recoverable only if the proof establishes a tender of reasonable charges and a request for a release. However, since the defendant especially urged an affirmance under § 3c, article VII, Oregon constitution, entry of a judgment against it for $1 is permissible. The cause will, therefore, be remanded to the circuit court with instructions to render a judgment in plaintiff's favor for the sum of $1. REVERSED.

REHEARING DENIED.

MOTION TO RECALL MANDATE ALLOWED.

BEAN, J., McBRIDE and RAND, JJ., concur.