Argued and submitted May 3, 2019; decision of Court of Appeals reversed in part, order of circuit court affirmed February 21, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

CHAD ALLEN ISELI,
*Petitioner on Review.*

(CC 15CR44279) (CA A161740) (SC S066142)

458 P3d 653

In a criminal prosecution against defendant, the state moved to admit hearsay statements under an exception that required the state, as the proponent, to establish that the declarant was unavailable as a witness because the state had been unable to procure her attendance by process or other reasonable means, OEC 804(1)(e). In assessing unavailability, the trial court did not consider facts about defendant's wrongful conduct that related to the victim's absence; it concluded that the state had not established that unavailability because it had not sought a material witness or a remedial contempt order. The state filed an interlocutory appeal, and the Court of Appeals reversed. *Held*: (1) The "totality of the circumstances" guides the extent to which any other means would have been reasonable for a proponent to pursue, to procure a declarant's attendance; (2) the totality of the circumstances extends to facts pertaining to the declarant's reluctance or nonattendance, including the extent to which wrongful conduct by another may have caused the nonattendance; and (3) although the trial court incorrectly viewed facts about the defendant's wrongful conduct as categorically irrelevant to the "unavailability as a witness" determination, even when those facts are considered, the state did not satisfy the "other reasonable means" component and therefore did not establish that the declarant was unavailable under OEC 804(1)(e).

The decision of the Court of Appeals is reversed in part. The order of the circuit court is affirmed.

En Banc

On review from the Court of Appeals.*

Sara F. Werboff, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

_____

* On appeal from Lane County Circuit Court, Charles M. Zennaché, Judge. 293 Or App 27, 426 P3d 238 (2018).

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

GARRETT, J.

The decision of the Court of Appeals is reversed in part. The order of the circuit court is affirmed.

**GARRETT, J.**

This interlocutory appeal involves the "unavailability as a witness" requirement under Oregon Evidence Code (OEC) 804(1), for purposes of applying an exception to the hearsay rule in a criminal case. Under OEC 804(1)(e), a potential witness is "unavailab[le]" if he or she is absent from a hearing, and the proponent seeking to introduce an earlier hearsay statement "has been unable to procure [his or her] attendance * * * by process or other reasonable means." In this case, the state served a subpoena on a key witness to testify against defendant and made other efforts to ensure her attendance at trial, but she did not attend. The state therefore moved to introduce her earlier out-of-court statements under the "forfeiture-by-wrongdoing" exception to the hearsay rule, OEC 804(3)(g), which allows the admission of hearsay statements by an unavailable witness if the opposing party engaged in intentional, wrongful conduct that caused the unavailability. The trial court found that the state had made substantial efforts to secure the witness's attendance and that she had expressed safety concerns about testifying. It also found, in relation to the forfeiture-by-wrongdoing exception, that defendant had engaged in intentional, wrongful conduct that had caused her absence. The court further determined, however, that the state had not established that the witness was unavailable because it had not sought a material witness warrant or a remedial contempt order. The court therefore denied the state's motion to admit her earlier statements.

The state appealed that ruling, and the Court of Appeals reversed, reasoning that—particularly in light of defendant's intentional, wrongful conduct—the state had satisfied the "process or other reasonable means" requirement of OEC 804(1)(e), thereby establishing that the witness was unavailable. *State v. Iseli*, 293 Or App 27, 38-39, 426 P3d 238 (2018). We allowed review. For the reasons that follow, we reverse in part the decision of the Court of Appeals and affirm the order of the trial court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts regarding the underlying incident from the Court of Appeals opinion, and we otherwise

take the facts from the record below. The criminal charges against defendant arose from an incident involving him and the witness (hereafter, "the victim"), with whom he had been in a romantic relationship. During an argument, defendant choked the victim, kicked her in the ribs, and hit her on the head. He dragged her down some stairs and outside by her hair, then locked her in a trailer while he attended a gathering of the Mongols Motorcycle gang. After returning, he continued assaulting the victim and threatened to kill her. *Id.* at 30.

Defendant eventually released the victim, who went to a friend's house and called 9-1-1. In that call, she described the beating and said that defendant was part of the Mongols gang and had threatened to kill her if she spoke to police. She expressed fear of defendant and said that she was hiding because the gang was looking for her. *Id.* at 30-31. She also called the sheriff's office.

The victim then went to the hospital, where she called the sheriff's office again and reiterated her statements. When the dispatcher told the victim that deputies would come to the hospital to interview her, the victim said that she did not want police at the hospital. *Id.*

A detective arrived to interview the victim, who described the incident, including defendant's threats to kill her. She also stated that defendant had repeatedly reminded her about the Mongols, telling her that he was the acting president and that, if she went to the police, "he had a huge area that he could dig a hole and bury [her] in[,]" and no one would ever find her. The victim also told the detective that defendant had warned her about being a "snitch" and a "rat," stating that Mongols viewed "rats" and "snitches" as "the lowest form of life." *Id.*

Defendant was arrested on multiple charges.[1] The victim was subpoenaed to attend the grand jury proceedings but did not attend. The state planned to call her as a witness at trial, and it again secured a subpoena for her attendance.

---

[1] The state charged defendant with first-degree kidnapping (two counts), second-degree assault, strangulation, coercion, menacing, and fourth-degree assault (two counts).

However, the state had lost contact with her and failed in several attempts at service. Finally, an officer watched the victim's apartment (which the trial court characterized as a "stake out"), waited for her to leave, and then conducted a traffic stop and served her.

During the period before trial, law enforcement officers and the prosecutor spoke with the victim several times about the importance of attending, and a detective scheduled a meeting with her, to take place in morning on the day before trial. At the last minute, though, the victim texted the detective to say that she could not make it to the meeting, but that she would attend trial the next day. In response, the detective located her and brought her to the prosecutor's office. There, the detective and the prosecutor again emphasized that the victim's attendance was important, and, to address her safety concerns, they offered to pay for a hotel room. She declined, stating that she would arrange for the detective to pick her up the next morning. However, the next morning, she informed the detective via text message that she would not attend and that she was at a friend's house. The detective did not know how to find her.

Meanwhile, earlier on the day before trial was to begin, and in anticipation of the possibility that the victim would not attend, the state had filed a motion *in limine* seeking admission of her out-of-court statements to 9-1-1, the sheriff's office dispatcher, and the detective at the hospital. In that motion, the state argued that the victim was unavailable as a witness and that her statements should therefore be admitted under the forfeiture-by-wrongdoing hearsay exception, OEC 804(3)(g), which permits the admission of a hearsay statement if the declarant is unavailable as a witness and the party against whom admission is sought engaged in wrongful conduct intended to cause, and in fact causing, the unavailability.

On the day that trial was scheduled to begin, when the victim did not appear, the trial court held a hearing on the state's motion. During a break, a detective unsuccessfully tried to locate the victim. At the close of the state's presentation, the trial court suggested that the state should seek a material witness warrant, but the state declined,

because—in its view—OEC 804(1)(e) did not require that step, in light of defendant's conduct and the victim's safety concerns.

The trial court then made detailed factual findings, to the effect that the state had undertaken "substantial" efforts to secure the attendance of the victim, who repeatedly had indicated an unwillingness to cooperate with the investigation and who had a history of not cooperating due to safety concerns. But the court next determined that, notwithstanding the state's efforts, it had not established that it had been "unable to procure" her attendance "by process or other reasonable means." OEC 804(1)(e). That was so, the court reasoned, because the state should have sought a warrant to secure her attendance under either the material witness statute or the statutory scheme for remedial contempt sanctions. *See generally* ORS 136.608 - 136.612 (setting out procedure for seeking material witness warrant); ORS 33.055 (setting out procedure for seeking remedial contempt sanctions, which may include issuance of arrest warrant). The court cited the stakes of the case—including defendant's liberty interest and the potentially lengthy sentence that he faced in light of the charges—as well as the importance of the victim's testimony (noting that no other witnesses saw the incident) and the cost of producing the witness, which he characterized as relatively minimal (noting, for example, that the state had the victim's home and work addresses, and that she had been in the area the preceding evening). The court then set the case over for five days, to permit the state to decide whether to seek a warrant or file an interlocutory appeal.

When the hearing reconvened, the state reiterated its position that it would not seek a material witness warrant or a remedial contempt order, which the trial court characterized as a "relatively easy way" to procure her attendance. The court then incorporated its earlier ruling, concluding that the state had not established that the victim was unavailable as a witness.

Although that ruling was dispositive of the state's motion, at the state's request, the trial court went on to make findings regarding the forfeiture-by-wrongdoing exception,

OEC 804(3)(g). The court determined that defendant had engaged in wrongful conduct that was intended to, and did, cause the victim to be absent from trial. In addition to defendant's physical abuse of the victim, the court found that the victim had feared retaliation if she told police. From those and other facts, the court determined that the victim's nonattendance was motivated by fear of defendant and the Mongols gang. The court further found that the victim did not think that law enforcement could adequately protect her, as reflected in her requests for "extraordinary security measures," such as being picked up at locations not disclosed until the last minute. Given those facts, the court concluded that—*if* the state had established the victim's unavailability—the forfeiture-by-wrongdoing exception would have applied to admit her earlier hearsay statements. Because of its earlier ruling on unavailability, however, the court issued an order denying the state's motion *in limine*.

The state filed an interlocutory appeal of that order.[2] The Court of Appeals determined that the record supported all the trial court's factual findings, and it reviewed that court's ruling under OEC 804(1)(e) for legal error, identifying the key principle as one of reasonableness under the circumstances. *Iseli*, 293 Or App at 36-37. In applying that principle, the Court of Appeals considered not only the trial court's factual findings under OEC 804(1)(e) about the victim's resistance to attending trial and the state's efforts to secure her attendance, but also its factual findings—made under OEC 804(3)(g)—regarding defendant's intentional, wrongful conduct that had resulted in her nonattendance. 293 Or App at 38-39. The Court of Appeals ultimately disagreed with the trial court, concluding that, "as a matter of law, the state [had] exhausted all means of producing the victim at trial that were reasonable under the circumstances" and, therefore, had sufficiently shown unavailability under OEC 804 (1)(e). *Iseli*, 293 Or App at 40. In the Court of Appeals' view, defendant's wrongful conduct toward the victim informed the inquiry whether the state had exhausted all reasonable measures to secure her attendance, and such "reasonable" measures did not, in the circumstances, include seeking

---

[2] *Former* ORS 138.060(1)(c) (2015), *amended and renumbered as* ORS 138.045(1)(d) (2017).

any type of warrant. *Id.* at 38-39. That court accordingly reversed the trial court's order that had denied the state's motion *in limine* seeking admission of the victim's earlier statements. *Id.* at 40. Defendant petitioned for review, which we allowed.[3]

## II.   ANALYSIS

### A.   *General Principles and Standard of Review*

As a general rule, hearsay statements are not admissible as evidence unless an exception applies. OEC 802.[4] Several exceptions are conditioned on the declarant being "unavailab[le] as a witness" under OEC 804(1). *See* OEC 804(3) (setting out exceptions, including forfeiture-by-wrongdoing). OEC 804(1) provides, in part:

> "'Unavailability as a witness' includes situations in which the declarant:
>
> "* * * * *
>
> "(e)   Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

Before a court may admit hearsay evidence under any exception that depends on a declarant's unavailability, including the "forfeiture-by-wrongdoing" exception, the proponent must establish that the declarant is "unavailab[le] as a witness" under OEC 804(1). *See State v. Thoma*, 313 Or 268, 276, 834 P2d 1020 (1992) (statement-against-penal-interest exception; declarant's "unavailability" is "a prerequisite to application of the [exception]"); *see also, e.g., State v. Nielsen*, 316 Or 611, 618-19, 853 P2d 256 (1993) (same exception;

---

[3] Defendant filed a cross-appeal in the Court of Appeals, challenging a different part of the trial court's evidentiary ruling. The Court of Appeals declined to exercise its discretion to address the cross-appeal and dismissed it, reasoning that the issues raised would be better addressed in the context of a developed trial record and that defendant could appeal if ultimately convicted. *Iseli*, 293 Or App at 29-30. Defendant did not challenge that ruling in his petition for review. In light of our disposition and the limited nature of defendant's petition for review, we do not disturb the Court of Appeals' ruling on defendant's cross-appeal.

[4] "Hearsay" is a statement made by a declarant, other than while testifying at trial or hearing, "offered in evidence to prove the truth of the matter asserted." OEC 801(3).

court analyzed "preliminary" question of unavailability before applying exception).

Focusing, then, on OEC 804(1)(e), the issue is whether the state, as the proponent of the hearsay evidence, established by a preponderance of evidence that the victim was "unavailable as a witness" because the state had been "unable to procure" her attendance at trial "by process or other reasonable means." *See State v. Pinnell*, 311 Or 98, 114, 806 P2d 110 (1991) (noting burden of proof). A separate but related issue presented by the parties' arguments on review (as discussed further below) is what role, if any, defendant's conduct toward the victim plays in that "unavailability" determination.

We begin by clarifying the nature of our review. First, any fact that the trial court found is binding, if supported by any evidence in the record. *See State v. Cunningham*, 337 Or 528, 537, 99 P3d 271 (2004), *cert den*, 544 US 931 (2005) (noting that standard for reviewing preliminary factual findings that bear on the admission of evidence). Those include historical facts about events that occurred, together with facts about the nature and underlying intent of defendant's conduct toward the victim. *See State v. Davis*, 313 Or 246, 260, 834 P2d 1008 (1992) (demonstrating scope of historical facts); *see also State v. Supanchick*, 354 Or 737, 744-45, 323 P3d 231 (2014) (a defendant's intent under OEC 804(3)(g) is question of fact that state must prove by a preponderance of evidence).[5] We agree with the Court of Appeals that the record supports the trial court's factual findings.

Turning to whether a declarant is "unavailab[le] as a witness" under OEC 804(1), our case law shows that, although the determination of historical events involves questions of fact, the subsequent assessment whether those facts satisfy the legal standard for "unavailability" is a legal, rather than factual, inquiry. For example, in *State v. Douglas*, 310 Or 438, 442-44, 800 P2d 288 (1990),

---

[5] As noted, defendant disputes that facts about his conduct had any bearing on the trial court's unavailability determination. We address that contention below; our point here is simply that, to the extent that the trial court found such facts to exist, and to the extent that those facts are pertinent to our inquiry, they are reviewed under the "any evidence" standard.

the question was whether the trial court had erred in ruling that a witness who had invoked her privilege against self-incrimination was unavailable under OEC 804(1)(a). This court explained that a trial court's task is to assess "'whether the requirements of unavailability have been satisfied[,]'" which involves preliminary factual questions, followed by an evaluation of those facts under the legal standard set out in OEC 804(1)(a):

> "'[OEC 804(1)] assigns to the trial judge the responsibility for making certain preliminary determinations regarding *** admissibility. *** Is a witness whose former testimony is offered unavailable? ***'
>
> "'To the extent that these preliminary inquiries are factual, the judge will necessarily receive evidence and act as a trier of fact. *** *Preliminary questions may also call for an evaluation of evidence in terms of a legal standard.* *** The judge is to make these decisions as well.'"

*Id.* at 443 (quoting Laird C. Kirkpatrick, *Oregon Evidence* § 804, 618 (2d ed 1989) (brackets and ellipses in *Douglas*; emphasis added)). The court went on to evaluate the trial court's findings in light of OEC 804(1)(a) and concluded that that court had not erred in determining that the declarant had been unavailable. 310 Or at 443-44.[6]

More recently, this court has expressly distinguished between "a trial court's *legal* ruling on the admissibility of disputed evidence"—which is reviewed for either legal error or abuse of discretion—and "preliminary *factual* determinations that a trial court may be required to make *** as predicates for its legal ruling." *Cunningham*, 337 Or at 536-37 (citing *State v. Rogers*, 330 Or 282, 313 n 9, 4 P3d 1261 (2000) (emphases in *Cunningham*)). Simply stated: In assessing unavailability, the question is not whether a declarant is unavailable in a factual sense. Instead, the question is whether the proponent of the declarant's hearsay

---

[6] In a later case, *Nielsen*, 316 Or at 618, this court characterized the inquiry under OEC 804(1)(e) as presenting a "preliminary question of fact" for the trial court to decide under OEC 104(1). *See also State v. Wilson*, 323 Or 498, 510-11, 918 P2d 826 (1996), *cert den*, 519 US 1065 (1997) (to similar effect, citing *Nielsen*). As explained, though, *Douglas* more particularly had framed the inquiry as involving preliminary factual questions, followed by evaluation of the facts under the legal standard set out in OEC 804(1). 310 Or at 443.

statement has satisfied the criteria set out in OEC 804(1), so as to establish by a preponderance of evidence that the declarant was "unavailab[le] as a witness" in the legal sense.

We turn to the standard of review. As this court has explained, some evidentiary determinations are reviewed for errors of law, while others are reviewed for abuse of discretion. *Cunningham*, 337 Or at 536. When a question involves application of principles that can lead to "only one legally correct outcome," the appellate court must determine whether the trial court erred as a matter of law. *Id.* at 538. By contrast, if application of the appropriate legal principles would permit more than one legally correct outcome, then the appellate court reviews for abuse of discretion. *Id.* at 536-38; *see also State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (comparing relevancy determinations under OEC 401, reviewed for legal error, with unfair prejudice determinations under OEC 403, reviewed for abuse of discretion); *State v. Hubbard*, 297 Or 789, 794 n 2, 797-800, 688 P2d 1311 (1984) (describing "discretion" as meaning that certain rulings "are not specified by rules of law, but rather have more than one legally correct outcome" and as deciding "from among available choices related to a specified evidentiary consideration," such as with OEC 403; concluding that trial court had discretion to limit extent of cross-examination for bias or interest).

Although this court has not specifically addressed the standard of review for "unavailability" determinations under OEC 804(1), we have done so under a different hearsay exception—that for an "excited utterance" under OEC 803(2). *Cunningham*, 337 Or 528. That exception requires that a statement "relat[e] to" a "startling event or condition," made "while the declarant was under the stress of excitement caused by the event or condition." OEC 803(2). In *Cunningham*, after emphasizing that the question involved an assessment whether those requirements had been satisfied, the court explained that it would review the trial court's ruling for legal error, reasoning that "only one legally correct outcome" existed because a statement "is either an excited utterance under OEC 803(2) or it is not." *Cunningham*, 337 Or at 538. The court expressly declined to afford any deference to a trial court's determination

under that rule, although it reiterated that the trial court in effect was afforded some deference in making its factual findings, through application of the "any evidence" standard for reviewing those findings. *Id.* at 538-39. In sum, a ruling that a statement qualifies under the "excited utterance" hearsay exception is reviewed for legal error. *Id.*

That same reasoning guides our review of a trial court determination that a declarant is unavailable as a witness under OEC 804(1). That rule sets out definitive criteria for "unavailability"—here, that the declarant is absent from the hearing and that the proponent has been unable to procure attendance by process or other reasonable means. And, like the excited utterance exception in OEC 803(2), OEC 804(1) requires a trial court to evaluate facts proffered under the specified criteria to determine whether they are satisfied. Thus, the rule appears to contemplate a standard that either is satisfied or is not; it does not suggest a range of legally permissible choices. *See Hubbard*, 297 Or at 794 n 2 (discretion typically involves the judge's experience and observation of the trial, in connection with the judge's authority to either admit or exclude evidence). *Cf.* OEC 403 (relevant evidence "*may* be excluded" (emphasis added) if its probative value is substantially outweighed by the danger of unfair prejudice or other identified circumstances). Thus, as did the Court of Appeals below, we review the trial court's determination that the state did not establish "unavailability" under OEC 804(1)(e) as a question of law.[7]

B.    *Construing OEC 804(1)(e)*

We turn to the intended meaning of OEC 804(1)(e)—specifically, the requirement that the proponent of a hearsay statement has been "unable to procure" the declarant's attendance "by process or other reasonable means," such that the declarant is unavailable as a witness. *See State v. Edmonds*, 364 Or 410, 422, 435 P3d 752 (2019) (construing Oregon Evidence Code requires application of statutory construction principles, focused on legislative intent). In doing

---

[7] The phrase "reasonable means" in OEC 804(1)(e) does not convert the legal question into a discretionary one. Rather, in context and as explained later, "reasonable means" sets an objective legal standard, based on the legislature's view of what is "reasonable."

so, we are mindful of the parties' arguments. Specifically, defendant contends that the trial court correctly ruled that the state had not established "unavailability" as a matter of law because it had not established an inability to procure the victim by process or other reasonable means; moreover, he adds, that court correctly declined to consider facts about his own conduct in reaching that conclusion. The state, in contrast, responds that it sufficiently established unavailability based on an inability to procure attendance by process or other reasonable means; moreover, it contends, the Court of Appeals correctly considered defendant's conduct in making that same determination.

    1.   *Text*

      We begin with the text, focusing on this wording: "unable to procure" the declarant's attendance "by process or other reasonable means." OEC 804(1)(e). The legislature did not define the quoted phrases. To the extent that the text includes words of common usage, we presume a legislative intent that they be given their ordinary meaning. *State v. Gaines*, 346 Or 160, 175, 206 P3d 1042 (2009). And, to the extent that the text includes legal terms of art, we seek to understand their established legal meanings. *State v. McNally*, 361 Or 314, 322, 392 P3d 721 (2017).

      The ordinary meaning of "unable" to "procure" refers, in this context, to circumstances in which the proponent is not able to cause the declarant's attendance.[8] *See Webster's Third New Int'l Dictionary* 2481, 4 (unabridged ed 2002) (defining "unable" as "not able" and defining "able" as "possessed of needed powers *** or of needed resources *** to accomplish an objective" or "having freedom from restriction or obligation or from conditions preventing an action"); *id.* at 1809 (defining "procure" as "to cause to happen or be done," "bring about," "EFFECT," or "ACHIEVE"). In light of the definition of "able," a proponent's inability to procure

---

[8] Throughout this opinion, we refer to the inability to procure a declarant's "attendance," because that term applies to the facts of this case. We note, though, that OEC 804(1)(e) also extends to a declarant's "testimony" in circumstances that do not apply here. *See* OEC 804(1)(e) (if seeking to apply a subset of the OEC 804(3) exceptions, proponent must show inability to procure declarant's attendance *or* testimony).

attendance takes into consideration the authority and resources available to the proponent, as well as situation-specific conditions or limitations.

As to procuring attendance "by process," the parties agree that "process" includes service of a subpoena. Because OEC 804(1)(e) addresses the context of court proceedings, we conclude that the legislature incorporated the legal meaning of "process"—the means by which a person may be compelled to appear in court. *See Black's Law Dictionary* 1458 (11th ed 2019) (defining "process," in part, as "[a] summons or writ, esp. to appear or respond in court <service of process>"). At the least, that would include service of a subpoena. *See generally* ORS 136.555 (in criminal proceedings, "[t]he process by which the attendance of a witness before a court or magistrate is required is a subpoena"). Also, logically, the inability to procure attendance "by process" would include the scenario in which the declarant is outside the reach of the court's subpoena power.

Beyond service of a subpoena, defendant advocates for a more expansive reading of "process," arguing that the proponent must pursue whatever additional process is available to enforce a subpoena. The state counters that any additional process should be evaluated as part of "other reasonable means."

There is no question that steps beyond service of a subpoena can be characterized as "process"—including securing either a material witness warrant or a remedial contempt order that directs the declarant's attendance. *See generally Black's* at 1458 (phrasing the securing of a summons or writ in terms of "judicial process" or "legal process," and then defining "compulsory process" as "[a] process, with a warrant to arrest or attach included, that compels a person to appear in court as a witness"). OEC 804(1)(e) neither expressly describes nor limits the type of process that must be used. Standing alone, then, the text at least arguably suggests that "process" may encompass the entire spectrum of process options available to a proponent, not necessarily limited to service of a subpoena.

We next observe that a proponent must seek to secure a declarant's attendance via either process "*or*"

other reasonable means. OEC 804(1)(e) (emphasis added). Although the conjunction "or" might suggest that a proponent must pursue *either* process *or* other reasonable means, but not necessarily both, the parties appear to view those components more collectively—such that a proponent must satisfy "process" (if the declarant is not outside the court's jurisdiction) and, depending on the circumstances, also "other reasonable means." It has long been recognized that effectuating legislative intent may sometimes require courts to construe "or" as meaning "and," and vice versa. *See generally United States v. Fisk*, 70 US (3 Wall) 445, 447, 18 L Ed 243 (1865) (so stating); *see also* Stephen M. Rice, *Leveraging Logical Form in Legal Argument: The Inherent Ambiguity in Logical Disjunction and its Implication in Legal Argument*, 40 Okla City U L Rev 551, 589-91 (2015) (discussing one of "De Morgan's laws," which provides that "the negation of a disjunction is the conjunction of the negations; thus, '–(*A* or *B*)' is equivalent to '(–*A*) and (–*B*)'" (italics in original)).[9] As explained later below, we conclude that the legislature intended a more collective application of the "process" and "reasonable means" components.

Because OEC 804(1)(e) separates the concepts of "process" and "other reasonable means," however, we presume that the latter component does not encompass efforts that the legislature intended to characterize as "process"; rather, it refers to options *other* than process that may be available to procure a declarant's attendance. Those other means then are qualified by the adjective "reasonable," which we understand to carry its common legal meaning: "[f]air, proper, or moderate under the circumstances; sensible," *Black's* at 1518, taking a "totality of the circumstances" approach. *See generally State v. Madden*, 363 Or 703, 723, 427 P3d 157 (2018) (noting statutory criteria involving an officer's "reasonable inquiry"); *State v. Johnson*, 339 Or 69, 86, 116 P3d 879 (2005) (when a statute establishes "reasonable" as a criterion, it sets an objective standard, based on legislature's view of what is "reasonable"); *State ex rel Juv. Dept. v. Smith*, 316 Or 646, 652-53, 853 P2d 282 (1993) (court

---

[9] Applying De Morgan's law here, "*unable* to procure," OEC 804(1)(e) (emphasis added), represents a "negative" preceding the conjunction "or," which converts "or" to "and."

reviewed facts offered pursuant to a statute establishing a reasonable likelihood standard under "totality of the circumstances" approach).

Notably, the word "reasonable" in OEC 804(1)(e) modifies only the "other *** means" of ensuring a declarant's attendance; it does not modify the word "process." Stated another way, the "process" that a proponent must pursue is not tempered by any requirement that it be "reasonable"; rather, "process" is described in absolute terms. It appears to follow that, if the legislature intended to require process beyond serving a subpoena *only* when warranted by particular circumstances, that type of process should be evaluated under the "other reasonable means" component, not the "process" component. That is, the legislature may have intended that the determination whether more intrusive process is required—and to what extent—depends on the totality of the circumstances, *i.e.*, whether it is "reasonable." At this juncture, the text does not clearly reveal how expansively we should construe the "process" component.

We turn to defendant's more specific argument that, when assessing unavailability under OEC 804(1)(e), a court may not consider a defendant's wrongful conduct that may have caused a declarant's nonattendance. The text—which, as just discussed, creates a totality of the circumstances framework by requiring pursuit of "reasonable" means— suggests that defendant is incorrect. The circumstances in a given case logically could extend to the reasons why a declarant had been difficult to locate, serve, or otherwise bring into court, because those reasons could inform the assessment of what "other *** means" would be "reasonable" to procure attendance. Defendant is correct that a person's wrongful conduct is singled out as being *relevant* to the forfeiture-by-wrongdoing inquiry in OEC 804(3)(g), which may result in the admission of hearsay statements only so long as the declarant is "unavailable" under OEC 804(1). But it does not logically follow that the wrongful conduct is *irrelevant* to the "unavailability" inquiry under OEC 804(1), which considers the totality of the circumstances.

In sum, our review of the text establishes that the "process" component of OEC 804(1)(e), which is described in

absolute terms, requires—at the least—the service of a sub-poena. It further suggests that the "process" and "reasonable means" components may have been intended to operate collectively, rather than alternatively. Finally, it shows that the "reasonable means" component establishes a totality of the circumstances approach, and it further suggests that a defendant's wrongful conduct in causing a declarant's non-attendance is part of that totality of circumstances. We next examine the context and the legislative history, to assist our determination of the legislature's intent.

    2.   *Context*

        Other parts of OEC 804(1) bolster the conclusion that "process" and "reasonable means" in paragraph (e) were intended to operate collectively, rather than alternatively. *See generally Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (context includes other provisions of same stat-ute and related statutes). Under subsection (1), a declarant's absence (paragraph (e)) is one of five identified ways in which a declarant can be unavailable as a witness. The other four are (1) court-ordered exemption due to privilege; (2) lack of memory; (3) inability due to a witness's death, then-existing physical or mental illness or infirmity; and (4) persistence in refusing to testify as to the subject matter of a statement despite a court order to do so. OEC 804(1)(a)-(d). Each of those provisions—like paragraph (e)—describes a situation in which it is either impossible (or virtually impossible) to obtain live testimony, or merely difficult to do so. For exam-ple, a witness's lack of memory (paragraph (1)(c)) or death, illness, or infirmity (paragraph (1)(d)) present scenarios in which live testimony is a certain or nearly certain impos-sibility. Those provisions do not require any demonstra-tion of effort by the proponent; the presentation of evidence establishing the existence of the condition is sufficient. In contrast, the other three provisions involve impediments to live testimony that can be overcome, and they require some sort of additional action, *viz.*, either obtaining a court order (under paragraphs (a) and (b), for a declarant who invokes a privilege or persists in refusing to testify) or pursuing pro-cess or other reasonable means (under paragraph (e), for a declarant who is absent). That context generally suggests a legislative intent to require additional efforts that are

commensurate with the relative likelihood of obtaining live testimony. As such, it is likely that the legislature did not intend that a party may establish a witness's "unavailability" merely by showing that the witness did not respond to a subpoena, if additional reasonable efforts could secure the witness's attendance.

Other context provides some support for the state's argument that a defendant's wrongful conduct in causing a declarant's nonattendance may bear on a trial court's unavailability assessment. Two of the hearsay exceptions set out in OEC 804(3)—the forfeiture-by-wrongdoing exception, OEC 804(3)(g), and a related exception for statements offered against a party who engaged in intentional or knowing criminal conduct that directly caused the death, incapacity, or incompetence of a declarant, OEC 804(3)(f)—recognize that a party-opponent's conduct can affect whether a declarant is unavailable as a witness. *See also* OEC 804(2) (if a declarant's inability or absence under OEC 804(1) is due to wrongdoing by the *proponent*, then the declarant is not unavailable). For our purposes here, those provisions acknowledge that another person's conduct may be the reason (or one of multiple reasons) for a declarant's nonattendance and, ultimately, unavailability. And, as explained above, the reason for a declarant's nonattendance may be an appropriate consideration under the totality of the circumstances, because it informs the inquiry about what "other reasonable means" a proponent must pursue in a particular case.

In sum, the context supports reading "process" and "reasonable means" as collective, rather than alternative, components of establishing unavailability under OEC 804(1)(e), and it further supports the notion that a defendant's wrongful conduct may come into play when assessing unavailability.

3. *Legislative history*

OEC 804(1) was enacted in 1981, as part of the Oregon Evidence Code. Or Laws 1981, ch 892, § 65. Before then, Oregon law recognized three instances of unavailability, but imposed no express statutory "unavailability" requirement. *See* Legislative Commentary to OEC 804,

*reprinted in* Laird C. Kirkpatrick, *Oregon Evidence* § 804.01[3], 891 (6th ed 2013) (before 1981, Oregon recognized claim of privilege, death or illness, and a declarant beyond the court's jurisdiction as nonstatutory bases for establishing unavailability). The enactment in 1981 of a statutory "unavailability" requirement thus expanded the instances of unavailability—which, if established, served to admit certain hearsay statements under the Oregon Evidence Code. *Id*. Simultaneously, though, the new requirement that the proponent "procure" attendance "by process or other reasonable means" imposed a more specific burden than before, if a declarant was absent. *See generally Ebbert v. First National Bank of Condon*, 131 Or 57, 68-69, 279 P 534 (1929) (error to admit hearsay statements of declarant who was still alive and when others with similar knowledge were within the court's jurisdiction but had not been called to testify).

The 1981 legislative commentary states that OEC 804(1) is based on Rule 804 of the Federal Rules of Evidence, as well as Oregon case law and then-existing statutes. Legislative Commentary to OEC 804, *reprinted in Oregon Evidence* § 804.01[1] at 890. As to paragraph (e), the commentary also cites *McCormick on Evidence* § 253 (Edward W. Cleary, ed.) (2d ed 1972), and laws from other states. *See* Legislative Commentary to OEC 804, *reprinted in Oregon Evidence* § 804.01[3] at 892 (citing those resources). We discuss those sources next.[10]

According to *McCormick*, if a declarant is absent, "[t]he degree of effort which must be made to find [the

---

[10] In light of the trial court's ruling in defendant's favor under OEC 804 (1)(e), this case does not involve defendant's constitutional rights to meet witnesses face to face under Article I, section 11, of the Oregon Constitution, or to confront witness under the Sixth Amendment to the United States Constitution. Both parties nonetheless suggest that related case law provides a lens through which the words "process or other reasonable means" in OEC 804(1)(e) could be understood. *See, e.g.*, *State v. Harris*, 362 Or 55, 66, 404 P3d 926 (2017) (under Article I, section 11, the state "must have exhausted all reasonably available means of producing [a] witness" before offering a hearsay statement based on unavailability; simply demonstrating nonattendance in response to a subpoena is insufficient); *Id*. at 62 (in light of defendant's strong interest in confronting witnesses, constitutional "unavailability" exception "cannot be granted routinely" (internal quotation marks omitted). We have considered those arguments but decline to unnecessarily delve into constitutional questions and instead focus on ascertaining the legislature's intended meaning of OEC 804(1)(e), following longstanding principles of statutory construction.

declarant] is usually described as 'due diligence[.]'"
*McCormick on Evidence* § 253 at 609. And such due dili-
gence is "susceptible of requiring greater effort when the
hearsay evidence is offered against an accused"—in this
context, a criminal defendant—"than in other situations."
*Id.*[11] That history suggests that a proponent must exercise
due diligence in seeking to procure attendance, for exam-
ple, in locating a declarant to secure service of a subpoena.
*See Id.* at 609 n 27 (citing cases showing examples of due
diligence—or lack thereof—all in context of efforts to locate
declarant for service).[12]

Turning to the federal rules, FRE 804(a)(5) provides—
almost identically to OEC 804(1)(e)—that a declarant is
"unavailable as a witness" if absent and the proponent "has
not been able, by process or other reasonable means," to pro-
cure his or her attendance. Under FRE 804(a)(5), enacted
in 1975, federal courts examine unavailability in terms of
two factors that are relevant here—the amenability of the
declarant to subpoena, and the prospect of inducing the
declarant's attendance. Christopher B. Mueller and Laird
C. Kirkpatrick, 5 *Federal Evidence* § 8:114, 48 (4th ed 2013).
As to the "amenability to subpoena" factor, "[i]f the declar-
ant is within geographical reach," a proponent seeking to
establish unavailability typically must attempt to serve a
subpoena. *Id.* at 49 & n 4 (so stating and citing pre-1981
case law). In a criminal case, though, the state must make

---

[11] Other state laws considered by the Oregon legislature also incorporated
a "diligence" concept. *See* Cal Evid Code § 240(a)(4)-(5) (1965) (absence required
either because "the court" is unable to "compel" attendance "by its process"
or the proponent has exercised "reasonable diligence but has been unable to
procure *** attendance by the court's process"); Kan Civ Proc Code § 60-459
(g)(4)-(5) (1963) (imposing a similar requirement about the court's inability to
compel attendance by process or requiring absence "because the proponent ***
does not know and with diligence has been unable to ascertain" the declarant's
whereabouts); NJ Rule of Evid 62(6)(d) (1979) ("unavailable as a witness" includes
when the proponent "is unable, despite due diligence," to procure attendance).

[12] The state notes that, when the legislature enacted the Oregon Evidence
Code, only the prosecution—not the defendant—could seek a material witness
warrant. That, in turn, lessens the likelihood that the legislature intended the
"process" component of OEC 804(1)(e) to necessarily require a proponent to seek
such a warrant for a nonattending declarant. *See former* ORS 136.607 (1977),
*repealed by* Or Laws 1995, ch 657, § 18 (permitting only the state to seek a mate-
rial witness warrant); *see also* Or Laws 1995, ch 657, § 14 (enacting current ORS
136.608 which permits either party in a criminal case to seek a material witness
order).

reasonable efforts closer to the trial date to ensure attendance. *Id.* at 55-56 & n 21 (so stating). As to the "prospect of inducing attendance" factor, federal cases explain that the government's authority to arrest and detain material witnesses can qualify as a "reasonable means" of procuring a declarant's testimony. *See id.* at 60 & n 31 (so stating and citing cases).

Mueller and Kirkpatrick go on to characterize the factors just discussed as "elements in a burden on the proponent" seeking to establish unavailability under FRE 804 (a)(5) that, in turn, are "limited" by an additional factor: "reasonable[ness] under the circumstances." 5 *Federal Evidence* § 8:114 at 48 (internal quotation marks omitted). More specifically, "[t]he 'reasonable means' clause limits situations where a declarant is considered unavailable by expanding the [proponent's] obligation *** to try to secure *** live testimony *beyond* exhausting subpoena power ***." *Id.* at 65 (emphasis added). At the same time, that clause reduces the proponent's obligation to pursue efforts "that are likely to be unproductive or too costly." *Id.* In considering reasonableness, a court should consider the stakes in the case, the parties' relative resources, the importance of the statement, the foreseeability of the need for the statement, and "the relative expense and difficulties that would be encountered" in securing attendance. *Id.* at 67 & n 50 (so stating and citing pre-1981 cases); *see also Oregon Evidence* § 804.01[4][e] at 897 (also citing stakes, cost of producing attendance, and importance of testimony).

That background from the federal rules strongly suggests that more intrusive methods of "process" beyond service of a subpoena are not absolutely required under the "process" component of OEC 804(1)(e), but, instead, may be required as part of "other reasonable means," depending on the circumstances. It also appears to confirm that the "process" and "reasonable means" components were intended to operate collectively, such that a proponent must pursue means other than process if, again, the circumstances require.

We turn to the remaining question: Whether, in assessing "other reasonable means," a court should consider

facts about a defendant's wrongful conduct in causing the declarant's absence from trial. *McCormick* states that absence "by procurement of the opposite party would seem in any event to be a sufficient showing of unavailability." *McCormick on Evidence* § 253 at 609 & n 28 (so stating and citing cases). That observation predated Oregon's adoption of the forfeiture-by-wrongdoing exception, OEC 804 (3)(g), which, as explained, requires a predicate unavailability showing. *See Supanchick*, 354 Or at 747-48 (discussing enactment of OEC 804(3)(g) in 2005).[13] Nonetheless, the legislature's use of *McCormick* as a resource for OEC 804(1) in 1981 suggests an acknowledgment that, in assessing "unavailability," a court may consider facts about defendant's wrongful conduct that relate to a declarant's nonattendance.

Further, as Mueller and Kirkpatrick explain, the degree to which a declarant is procurable is part of the unavailability assessment under the federal rule—which also served as a resource for the Oregon legislature. Another person's wrongful conduct may inform the degree, or the nature, of the declarant's procurability, which, as discussed earlier, in turn may inform the reasonableness of other means that a proponent must pursue to secure attendance under OEC 804(1)(e). It follows that, as part of the inquiry into the totality of the circumstances, a party's own conduct is not categorically irrelevant to assessing unavailability merely because it also features in subsequent application of the forfeiture-by-wrongdoing exception, OEC 804(3)(g).

4.  *Summary*

From the text, context, and legislative history surrounding the enactment of OEC 804(1)(e), we conclude as follows. First, "process" refers to the proponent serving a declarant with a subpoena, but it does not refer to more intrusive forms of process. Stated another way, although a proponent must serve a subpoena on a declarant within the court's jurisdiction to satisfy "process," that component does not *require* pursuit of more intrusive forms of process for enforcement purposes in every case. Instead, the

---

[13] OEC 804(3)(g) was enacted in response to *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), which involved the Sixth Amendment right to confront witnesses. *Supanchick*, 354 Or at 747-48.

"other reasonable means" component governs process of that nature.

Second, although the "process" and "other reasonable means" components are set out alternatively in OEC 804(1)(e), they operate collectively. That is, merely showing "process" via service of a subpoena may not necessarily satisfy the legislature's intended criteria for establishing a nonattending declarant's unavailability. And, somewhat conversely, if process via service of a subpoena is not possible because the declarant is beyond the subpoena's reach, a proponent still may need to establish "unavailability" by showing pursuit of "other reasonable means."

Third, the totality of the circumstances guides the extent to which any other means—in the form of more intrusive process beyond service of a subpoena, or other efforts not in the nature of "process"—would have been reasonable for a proponent to pursue. Those circumstances encompass a wide range of factors, including the proponent's efforts to procure the declarant's attendance beyond service of a subpoena; the resources available to the proponent; available options that the proponent did not pursue; any limit on the proponent's efforts; and the likelihood that additional efforts would procure attendance. Other factors include the importance of the declarant's testimony, the cost of procuring the declarant, and the stakes of the case.

Fourth, the totality of the circumstances also extends to facts pertaining to the declarant's reluctance or nonattendance, including the extent to which wrongful conduct by another may have caused the nonattendance. As explained earlier, those considerations, together with those summarized in the preceding paragraph, inform the assessment as to "other reasonable means" that should be pursued to procure attendance.

C.  *Review of Trial Court's Ruling*

We now apply those principles to our review of the trial court's ruling. To reiterate, the court concluded that the state had pursued "process" at least to this extent: it had served the victim with a subpoena. The court further concluded, however, that "process or other reasonable means"

required the state to seek either a material witness warrant or a remedial contempt order. Because the state had done neither, the court continued, it had not established that the victim was unavailable as a witness under OEC 804(1)(e). In reaching that conclusion, the court considered many facts about the victim's nonattendance, including her expressed fear and safety concerns. It did not, however, consider facts about defendant's wrongful conduct that related to her nonattendance.

Regarding the facts that the trial court *did* consider as part of assessing "other reasonable means," we agree that the record supports those extensive findings and that the court appropriately weighed and considered them. As explained earlier, the trial court considered many facts that weighed in the state's favor, including its "substantial" efforts to procure the victim's attendance. However, it also found that the victim had a history of not cooperating, not attending court even when subpoenaed, and making last-minute decisions regarding attendance. Those facts reflected a pronounced likelihood that she would not attend trial. In addition, the prosecutor had been in personal contact with the victim the night before trial, and so knew her to be in the area, and also knew her home and work locations. Those facts reflected an increased likelihood that a more intrusive means of process would succeed in procuring her attendance. Third, the case involved high stakes—serious felony charges against a criminal defendant that, upon conviction, would result in lengthy sentences. Finally, the victim's testimony was critical to a criminal prosecution in which defendant's liberty interest was particularly pronounced (in light of the serious charges and ensuing consequences if convicted). Collectively, those considerations required the state to intensify its efforts to procure the victim's attendance—such as requesting a material witness warrant or initiating remedial contempt proceedings. When given the opportunity to do so, however, the state declined.

The trial court also considered facts concerning the victim's reluctance to cooperate and her nonattendance at trial. In its "unavailability" assessment, the court expressly found that the victim had expressed fear and safety concerns throughout her dealings with law enforcement and

the state. In its "forfeiture-by-wrongdoing" assessment, the court considered more specific, additional facts about the reason for the victim's nonattendance and defendant's related conduct—namely, that she had feared retaliation from both him and the Mongols, based on his conduct towards her that was intended to dissuade her from cooperating or testifying. And the court determined that her nonattendance had been motivated by those fears and her perception that she would not be adequately protected.

As we have explained, the trial court was incorrect to view those facts as categorically irrelevant to the "unavailability as a witness" determination under OEC 804(1)(e). Ultimately, though, when we add those facts to the calculus, we again conclude that the trial court's ultimate ruling—that the state did not satisfy the "other reasonable means" component and, therefore, did not establish that the victim was unavailable—was correct. To be sure, defendant's wrongful conduct framed more clearly the reasons for, and the intensity of, the victim's apprehension and motivation for not cooperating. Those facts did not, however, lessen the import of the other key facts summarized above that required the state to intensify its efforts to secure the victim's attendance. Indeed, the additional facts about defendant's wrongful conduct in causing the victim's nonattendance underscored the likelihood that the victim would not attend trial, thus supporting—together with the other factors—the trial court's conclusion that "other reasonable means" in this case included seeking a material witness warrant or a remedial contempt order.

In sum, we agree with the trial court that the state did not establish that the victim was "unavailab[le] as a witness" under OEC 804(1)(e). In light of that conclusion, the court correctly ruled that her earlier hearsay statements were not admissible under the "forfeiture-by-wrongdoing" exception, OEC 804(3)(g), and correctly denied the state's motion *in limine* seeking to admit those statements.

The decision of the Court of Appeals is reversed in part. The order of the circuit court is affirmed.