470 April 2, 2025 No. 293

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL DALE MORGAN,
*Defendant-Appellant.*

Washington County Circuit Court
22CR23144; A182814

Ricardo J. Menchaca, Judge.

Submitted December 30, 2024.

Frances J. Gray filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for fourth-degree assault constituting domestic violence, entered following a conditional guilty plea. In his only assignment of error, defendant challenges the trial court's pretrial ruling that M, a state's witness, was unavailable for purposes of the confrontation right guaranteed by Article I, section 11, of the Oregon Constitution, contending that the state did not exhaust all reasonably available means to produce M as a witness, because it failed to seek a "material witness order," ORS 136.608, directing M to appear before the trial court.[1] *See* ORS 136.611 (specifying steps the court must take upon receipt of a well-founded application under ORS 136.608). For the reasons specified below, we affirm.

"[W]hether a witness is 'unavailable' for purposes of overcoming defendant's Article I, section 11, confrontation right is a question of law." *State v. Belden*, 369 Or 1, 11-12, 499 P3d 783 (2021). We are bound by the trial court's factual findings "'if supported by any evidence in the record.'" *Id.* at 13 (quoting *State v. Iseli*, 366 Or 151, 159, 458 P3d 653 (2020)).

Defendant argues that the trial court applied an incorrect legal standard related to witness availability when it referenced the state's "good faith" efforts to produce the witness in its ruling. He notes that the legal standard for unavailability under Article I, section 11, is articulated in *Belden*: "the constitutional confrontation guarantee requires that the 'state must have exhausted all reasonably available means of producing the witness.'" *Id.* at 10 (quoting *State v. Harris*, 362 Or 55, 66, 404 P3d 926 (2017)).

We disagree with defendant's argument that the court erroneously applied a less rigorous "good faith" legal standard

---

[1] The state sought to admit M's out-of-court-hearsay statements about defendant that were recorded in her medical records under OEC 803(4) (statements made for the purposes of medical diagnosis or treatment) over defendant's confrontation objection. For the purposes of the evidentiary rule, the availability of the declarant does not play a role in whether the hearsay evidence is admitted. OEC 803 (specifying types of hearsay that are admissible regardless of the availability of the witness). However, for the purposes of defendant's confrontation right guaranteed by Article I, section 11, the declarant must be unavailable, and the hearsay statements must also have adequate indicia of reliability. *State v. Cook*, 340 Or 530, 540, 135 P2d 260 (2006).

that was based on outdated case law. The record shows that the parties alerted the trial court to the most recent Supreme Court cases on the unavailability standard, *i.e., Belden* and *Harris*, and both cases are explicit that exhausting all reasonably available means to produce the witness is the constitutional standard for unavailability. *Id.* Those cases are consistent with the understanding that the witness is unavailable if "'the prosecutorial authorities have made a good-faith effort to obtain [the witness's] presence at trial.'" *Harris*, 362 Or at 64 (quoting *Ohio v. Roberts*, 448 US 56, 74, 100 S Ct 2531, 65 L Ed 2d 597 (1980), overruled by *Crawford v. Washington*, 541 US 36, 43-50, 124 S Ct 1354, 158 L Ed 2d 177 (2004)). That is because the aforementioned "good-faith effort" means that "the prosecutor must exhaust reasonable measures for obtaining the witness: 'If there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation.'" *Harris*, 362 Or at 64 (quoting *Roberts*, 448 US at 74 (alteration omitted; emphasis in *Roberts*). Under that standard, "the extent of the prosecutor's obligation to procure the witness is a question of reasonableness." *Id.* (citing *Roberts*, 448 US at 74); *see also State v. Campbell*, 299 Or 633, 648, 705 P2d 694 (1985) ("[W]e * * * adopt the reasoning of the Supreme Court of the United States in determining what constitutes unavailability of a hearsay declarant and what constitutes adequate indicia of reliability of hearsay declarations to satisfy our state constitutional confrontation clause.").

Given that legal framework, in context, we do not think that the trial court's reference to "good faith" indicates that it applied the incorrect standard to determine whether a witness is unavailable for the purposes of Article I, section 11. As mentioned above, the court was alerted to the relevant case law before making its determination. The court's oral ruling indicates that it considered the numerous methods by which the police and the district attorney's office attempted to secure M's presence before concluding that the state had shown, by a preponderance of the evidence, that those attempts to contact and locate M were reasonable, and that those efforts—discussed more fully below—were sufficient to demonstrate M's unavailability in light of the factual circumstances present at that time.

Defendant next argues that the trial court erroneously concluded that the state exhausted all reasonable measures to secure the presence of M as a witness. Defendant points out that the state was aware that M would not appear voluntarily, and that it did not show that securing a material witness warrant to compel M's attendance would be futile. As a result, he argues, the trial court erred when it found that the state exhausted all reasonable measures to secure M's presence at trial.[2] The evidence in the record supports the trial court's explicit finding that M would not voluntarily appear in court. This record also indicates that M consistently appeared in court when served with a subpoena, despite, as characterized by the state, her expressed "hostility" to the prosecution. The trial was continued for one month in order to secure her attendance, and the record supports the trial court's finding that during that time, the state did not know where M was located, and that the state used a variety of methods, including attempting to contact her directly via phone and email, searching through databases for updated information on her whereabouts, visiting addresses associated with her family members, and contacting shelters and family members by phone, to attempt to locate and serve M with a subpoena. Defendant argues that the state was required to seek a material witness warrant in order to exhaust all reasonably available measures to secure M's presence at trial. But the facts of this case indicate that resort to that form of process would not have been a reasonable option under the circumstances, because it would likely have been futile. *See Iseli*, 366 Or at 166 ("The circumstances in a given case * * * inform the assessment of what other means would be reasonable to procure attendance." (Internal quotations and alteration omitted)); *Harris*, 362 Or at 65 ("[T]he law does not require the state to engage in futile measures."). The trial court's ruling was not in error.

Affirmed.

---

[2] On appeal, defendant argues that additional methods to obtain M's presence—the use of a fugitive team, a professional process server, or a law enforcement agency that specializes in locating people—were "reasonably available" to the state. We agree with the state that those options were not argued below and as a result the argument is not preserved.